No. 23-16083

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

BRIAN NETZEL, *et al.*

*Plaintiffs-Appellants*,

*v.*

AMERICAN EXPRESS COMPANY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the District of Arizona
No. 2:22-cv-01423-SMB
The Honorable Susan M. Brnovich

---

## BRIEF OF APPELLEE

---

John E. Kiley
Adam Pekor
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
jkiley@sheppardmullin.com
apekor@sheppardmullin.com

Todd E. Lundell
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Tel.: (714) 424-2845
Fax: (714) 428-5947
tlundell@sheppardmullin.com

*Attorneys for Defendant-Appellee*

## **DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Appellee American Express Company, Inc. ("American Express") is a New York corporation, that American Express has no parent corporation, and that 10% or more of American Express's common stock is owned by Berkshire Hathaway Inc.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................3

JURISDICTIONAL STATEMENT ..........................................................5

STATEMENT OF THE CASE ................................................................5

SUMMARY OF ARGUMENT ...............................................................11

STANDARD OF REVIEW ..................................................................14

ARGUMENT ..................................................................................16

I.      THE ARBITRATION POLICY'S CHOICE OF NEW YORK LAW
        IS CONTROLLING ................................................................16

        A.      California Has No Connection to Netzel's or Smith's
                Arbitration Agreements ................................................17

        B.      California Does Not Have a Materially Greater Interest than
                New York In Larson's Agreement to Arbitrate .................19

II.     APPELLANTS CANNOT INVOKE *MCGILL* BECAUSE THEY DO
        NOT SEEK PUBLIC INJUNCTIVE RELIEF ....................................20

III.    THE ARBITRATION POLICY IS NOT CONTRARY TO *MCGILL* .........25

        A.      The Arbitration Policy's "Any Remedy" Clause Authorizes
                Public Injunctive Relief ................................................25

        B.      The Individual Claims Only Provision Does Not Prohibit Public
                Injunctive Relief ........................................................26

        C.      Any Doubts About the Arbitration Policy Should Be Construed
                in Favor of Enforceability ............................................29

IV.     APPELLANTS' EXPANSIVE READING OF *MCGILL* IS
        CONTRARY TO THE FEDERAL ARBITRATION ACT ........................30

V.      THE ARBITRATION POLICY IS NOT UNCONSCIONABLE ...............32

        A.      Appellants' Agreements to Arbitrate Are Not Procedurally
                Unconscionable ..........................................................33

                1.      The Mandatory Nature of Netzel's and Langkamp's
                        Arbitration Agreements Does Not Render Them
                        Procedurally Unconscionable ................................33

2. The District Court's Finding that American Express Gave Appellants Advance Notice of the Arbitration Policy Is Not Clearly Erroneous ............................................................ 35

B. The Arbitration Policy Is Not Substantively Unconscionable ............ 39

1. American Express Has No Discretion to Avoid Arbitration ............................................................................ 39

2. The Confidentiality Clause Does Not Impermissibly Favor American Express ........................................................ 42

3. American Express's Right to Modify the Arbitration Policy Is Bounded by the Duty of Good Faith and Fair Dealing ............................................................................ 48

VI. ANY UNCONSCIONABLE PROVISIONS OF THE ARBITRATION POLICY CAN AND SHOULD BE SEVERED .............. 50

CONCLUSION ........................................................................................ 51

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*A.G. Edwards & Sons, Inc. v. Smith*
    736 F. Supp. 1030 (D. Ariz. 1989) ....................................................20

*ABF Cap. Corp. v. Osley*
    414 F.3d 1061 (9th Cir. 2005) ..........................................................16

*Adkins v. Comcast Corp.*
    2018 WL 4846548 (N.D. Cal. Feb. 15, 2018) ....................................29

*Am. Fam. Life Assurance Co. of New York v. Baker*
    778 F. App'x 24 (2d Cir. 2019) .........................................................43

*Anderson v. City of Bessemer City, N.C.*
    470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) .......................15, 35, 36

*Angelo Lira v. Nat'l Distribution Centers, LLC*
    No. EDCV21672JGBKKX, 2023 WL 8053857 (C.D. Cal. Apr. 19, 2023) ......26

*Asher v. E! Ent. Television, LLC*
    No. CV 16-8919-RSWL-SSX, 2017 WL 3578699 (C.D. Cal. Aug. 16, 2017) ...................................................................................................46

*AT&T Mobility LLC v. Concepcion*
    563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) .................43

*Blair v. Rent-A-Ctr., Inc.*
    928 F.3d 819 (9th Cir. 2019) ............................................................29

*CACI Premier Tech., Inc. v. Faraci*
    464 F. Supp. 2d 527 (E.D. Va. 2006) ................................................42

*Capriole v. Uber Techs., Inc.*
    7 F.4th 854 (9th Cir. 2021) ...............................................................22

*Carrillo v. Gruma Corp.*
    No. EDCV162276JGBSPX, 2017 WL 11631614 (C.D. Cal. Mar. 14, 2017) ...................................................................................................50

*Chandler v. Int'l Bus. Machines Corp.*
No. 21-CV-6319 (JGK), 2022 WL 2473340 (S.D.N.Y. July 6, 2022) ..............44

*Chess v. CF Arcis IX LLC*
No. 20-CV-01625-CRB, 2020 WL 4207322 (N.D. Cal. July 22, 2020)
........................................................................................................49, 50

*Clifford v. Quest Software Inc.*
38 Cal. App. 5th 745, 251 Cal. Rptr. 3d 269 (Cal. Ct. App. 4th Dist.
2019) ........................................................................................................22

*Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*
308 A.D.2d 261, 762 N.Y.S.2d 607 (N.Y. App. Div. 1st Dept. 2003) ..............43

*Darnaa, LLC v. Google, Inc.*
No. 15-CV-03221-RMW, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015)...........38

*de Souza Silva v. Pioneer Janitorial Servs., Inc.*
777 F. Supp. 2d 198 (D. Mass. 2011)....................................................40

*DiCarlo v. MoneyLion, Inc.*
988 F.3d 1148 (9th Cir. 2021) ......................................................passim

*Drake v. Hyundai Rotem USA, Corp.*
No. CIV.A. 13-0868, 2013 WL 4551228 (E.D. Pa. Aug. 28, 2013)............40, 41

*Effio v. FedEx Ground Package*
No. cv-08-1522-PHX-ROS, 2009 WL 775408 (D. Ariz. Mar. 20, 2009)
........................................................................................................16, 18

*EHM Prods., Inc. v. Starline Tours of Hollywood, Inc.*
1 F.4th 1164 (9th Cir. 2021) ..............................................................48

*Equal Emp. Opportunity Comm'n v. Cheesecake Factory, Inc.*
No. CV08-1207PHXNVW, 2009 WL 1259359 (D. Ariz. May 6, 2009) ..........34

*Fisher v. Tucson Unified Sch. Dist.*
652 F.3d 1131 (9th Cir. 2011) ............................................................15

*Fleming v. J. Crew*
No. 1:16-CV-2663-GHW, 2016 WL 6208570 (S.D.N.Y. Oct. 21, 2016) .........33

*Gonzalez-Torres v. Zumper, Inc.*
No. 19-CV-02183-PJH, 2019 WL 6465283 (N.D. Cal. Dec. 2, 2019)
...............................................................................................................25, 26

*Guyden v. Aetna, Inc.*
544 F.3d 376 (2d Cir. 2008) ........................................................................42, 43

*Harrington v. Pulte Home Corp.*
211 Ariz. 241, 119 P.3d 1044 (Ariz. Ct. App. 2005) .......................................19

*Hodges v. Comcast Cable Commc'ns, LLC*
21 F.4th 535 (9th Cir. 2021) ....................................................................passim

*Kilgore v. KeyBank, N.A.*
718 F.3d 1052 (9th Cir.2013) ..........................................................................46

*Kopple v. Stonebrook Fund Mgmt.*
LLC, 21 Misc. 3d 1144(A), 875 N.Y.S.2d 821 (N.Y. Sup. Ct. 2004) ..............44

*Lagatree v. Luce, Forward, Hamilton & Scripps*
74 Cal. App. 4th 1105, 88 Cal. Rptr. 2d 664 (1999) ........................................34

*Lebowitz v. Dow Jones & Co.*
508 F. App'x 83 (2d Cir. 2013) ........................................................................49

*Lee v. Postmates Inc.*
No. 18-CV-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) .............26

*Longnecker v. Am. Exp. Co.*
23 F. Supp. 3d 1099 (D. Ariz. 2014) ..........................................................47, 48

*Lyons v. NBCUniversal Media, LLC*
No. CV193830MWFJEMX, 2019 WL 6703396 (C.D. Cal. Sept. 27,
2019) ................................................................................................................49

*Magana v. DoorDash, Inc.*
343 F. Supp. 3d 891 (N.D. Cal. 2018)..............................................................26

*Maldonado v. Fast Auto Loans, Inc.*
60 Cal. App. 5th 710 (Cal. Ct. App. 4th Dist. 2021) ...................................23, 31

*Maxwell v. Fid. Fin. Servs., Inc.*
184 Ariz. 82 (Ariz. 1995)..................................................................................33

*McGill v. Citibank, N.A.*
2 Cal. 5th 945 (Cal. 2017)............................................................passim

*Mejia v. DACM Inc.*
54 Cal.App.5th 691, 268 Cal. Rptr. 3d 642 (Cal. Ct. App. 4th Dist. 2020)
...................................................................................................23, 31

*Melez v. Kaiser Found. Hosps., Inc.*
No. 2:14-CV-08772-CAS, 2015 WL 898455 (C.D. Cal. Mar. 2, 2015)............46

*Mercuro v. Superior Ct.*
96 Cal. App. 4th 167, 116 Cal. Rptr. 2d 671 (Cal. Ct. App. 2nd Dist.
2002) ......................................................................................................47

*Monsanto v. DWW Partners, LLLP*
No. CV-09-01788-PHX-FJM, 2010 WL 234952 (D. Ariz. Jan. 15, 2010)........34

*Monster Energy Co. v. City Beverages, LLC*
940 F.3d 1130 (9th Cir. 2019) ..............................................................47

*Morris v. Temco Serv. Indus., Inc.*
No. 09 CIV 6194 WHP, 2010 WL 3291810 (S.D.N.Y. Aug. 12, 2010)............40

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983)................................................................................15

*Mumin v. Uber Techs., Inc.*
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ....................................................32

*Nagrampa v. MailCoups, Inc.*
469 F.3d 1257 (9th Cir. 2006) ..............................................................47

*O'Connor v. Uber Techs., Inc.*
904 F.3d 1087 (9th Cir. 2018) ..............................................................15

*Peleg v. Neiman Marcus Grp., Inc.*
204 Cal. App. 4th 1425, 140 Cal. Rptr. 3d 38 (2012) ......................................49

*Poublon v. C.H. Robinson Co.*
846 F.3d 1251 (9th Cir. 2017) ......................................................44, 45, 46, 47

*Ramos v. Superior Ct.*
    28 Cal. App. 5th 1042, 239 Cal. Rptr. 3d 679 (Cal. Ct. App. 1st Dist. 2018) ..................................................................................44, 45, 46

*Rivera v. Uniqlo California, LLC*
    No. LACV1702848JAKJPRX, 2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ..................................................................................................26

*Rogers v. Lyft, Inc.*
    No. CGC-20-583685, 2020 WL 2532527 (Cal. Super. Ct. Apr. 30, 2020) .......22

*Rojo v. Kliger*
    52 Cal. 3d 65, 801 P.2d 373 (Cal. 1990) ............................................24

*Sanchez v. Carmax Auto Superstores California, LLC*
    224 Cal. App. 4th 398, 168 Cal. Rptr. 3d 473 (Cal. Ct. App. 2nd Dist. 2014) .............................................................................................44, 45

*Sanfilippo v. Match Grp. LLC*
    No. 20-55819, 2021 WL 4440337 (9th Cir. Sept. 28, 2021).......................34, 50

*Serrano v. Macys W. Stores, Inc.*
    No. CV202434MWFJEMX, 2020 WL 6083439 (C.D. Cal. July 9, 2020)........47

*Shelby v. Brookdale Senior Living Inc.*
    No. CV-20-00804-PHX-MTL, 2021 WL 718183 (D. Ariz. Feb. 24, 2021) ......................................................................................................33, 46

*Smith Barney Shearson Inc. v. Sacharow*
    91 N.Y.2d 39 (N.Y. 1997) ...............................................................19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
    559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ................................43

*Storms v. Paychex, Inc.*
    2022 WL 2160414 (C.D. Cal. 2022) ........................................................44, 45

*Storms*, *Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003) ...............................................................46

*Suqin Zhu v. Hakkasan NYC LLC*
    291 F. Supp. 3d 378 (S.D.N.Y. 2017) ...................................................44

*Tamanaha v. DroneBase, Inc.*
No. B307866, 2022 WL 403917 (Cal. Ct. App. 2nd Dist. Feb. 10, 2022).........38

*Tillage v. Comcast Corp.*
772 F. App'x 569 (9th Cir. 2019) ......................................................29

*U.S. v. Gay*
967 F.2d 322 (9th Cir. 1992) .............................................................24

*United States v. Graf*
610 F.3d 1148 (9th Cir. 2010) ...........................................................15

*United States v. Sanmina Corp.*
968 F.3d 1107 (9th Cir. 2020) ...........................................................15

*United States v. Singulex, Inc.*
No. 4:16-CV-05241-KAW, 2019 WL 1472307 (N.D. Cal. Apr. 3, 2019)
.........................................................................................................39, 40

*Utica Mut. Ins. Co. v. INA Reinsurance Co.*
No. 6:12-CV-194, 2012 WL 13028279 (N.D.N.Y. June 12, 2012) ...................43

*Vaughn v. Tesla, Inc.*
87 Cal. App. 5th 208 (Cal. Ct. App. 1st Dist. 2023) ....................................23, 24

*Victorio v. Sammy's Fishbox Realty Co., LLC*
No. 14 CIV. 8678 CM, 2015 WL 2152703 (S.D.N.Y. May 6, 2015)...............33

*Wiseley v. Amazon.com, Inc.*
709 F. App'x 862 (9th Cir. 2017) ......................................................33

*Yost v. Everyrealm, Inc.*
No. 22 CIV. 6549 (PAE), 2023 WL 2859160 (S.D.N.Y. Apr. 10, 2023)..........50

*Zolezzi v. Dean Witter Reynolds, Inc.*
789 F.2d 1447 (9th Cir. 1986) ...........................................................30

*Zoller v. GCA Advisors, LLC*
993 F.3d 1198 (9th Cir. 2021) ......................................................15, 35

## Statutes

California Fair Employment and Housing Act ........................................................9

California Unfair Competition Law ...........................................................................9

Civil Rights Act of 1964 Title VII ......................................................................1, 9

Federal Arbitration Act ...................................................................................passim

## Other Authorities

AAA Employment Arbitration Rule 16(a)(1).........................................................48

Restatement (Second) of Conflict of Laws §§ 187-88 (1971).........16, 17, 18, 19, 20

## **INTRODUCTION**

Appellants are former employees of American Express Travel Related Services Company, Inc., a wholly owned subsidiary of Appellee American Express Company, Inc. ("American Express" or the "Company"). In connection with their employment, Appellants agreed to resolve all employment-related disputes with the Company through individual arbitration. Despite their agreements, in 2022, Appellants filed a putative class action in the U.S. District Court for the District of Arizona alleging that American Express discriminated against them because they are white, in violation of Title VII of the Civil Rights Act of 1964 and California law. While the Company adamantly denies those allegations, the merits of Appellants' claims are not at issue. All that matters for purposes of this appeal is that Appellants are bound by valid agreements to arbitrate their claims.

Appellants contend that, although they agreed to arbitration, their agreements (the "Arbitration Agreements") are unenforceable because: (i) the Company's employment arbitration policy (the "Arbitration Policy") violates the rule against waivers of public injunctive relief set forth in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (Cal. 2017); and (ii) their Arbitration Agreements are unconscionable. Those arguments each fail for multiple reasons.

At the outset, it bears emphasizing that California's *McGill* rule has no application here because Appellants' Arbitration Agreements are governed by a

-1-

valid New York choice of law clause in the Arbitration Policy. Given New York's substantial relationship to the parties and the issues in this case – and California's lack of any relevant connection to three of the four Appellants – their attempt to circumvent the New York choice of law clause is unavailing.

However, even if California law did control, Appellants would still be unable to invoke *McGill* because the primary beneficiaries of the relief they seek would undoubtedly be Appellants themselves and the putative class of white American Express employees they aim to represent – not the general public. Accordingly, Appellants do not seek public injunctive relief and, thus, cannot rely on the *McGill* rule to avoid arbitration.

And even if Appellants were seeking public injunctive relief, their argument would still fail because the plain language of the Arbitration Policy and this Court's decision in *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021), make clear that the Arbitration Policy does not prohibit public injunctive relief and, therefore, does not implicate *McGill* in any manner. Notably, Appellants fail to even cite, let alone attempt to distinguish, *DiCarlo*, a controlling decision that directly undercuts their position.

Finally, assuming *arguendo* that Appellants' expansive reading of *McGill* is correct, then the application of *McGill* to this case must be rejected since, given the

nature of Appellants' claims and the relief they seek, applying *McGill* here would be inconsistent with the Federal Arbitration Act ("FAA").

Appellants' claim that their Arbitration Agreements are unconscionable is equally flawed. As the District Court found, even before joining American Express, Appellants Netzel and Langkamp were given notice that they would be required to agree to arbitration if they accepted employment with the Company. Hence, Netzel and Langkamp's claim that they were duped into signing their Arbitration Agreements rings hollow.

While the District Court did not reach the question of substantive unconscionability, as explained below, Appellants' objections to various provisions of the Arbitration Policy likewise fail. In any case, given the strong public policy in favor of arbitration, any unconscionable provisions can and should be severed.

Accordingly, the District Court properly granted American Express's motion to compel arbitration and its decision should be affirmed.

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

Appellants' statement of the issues presented for review is imprecise and slanted. American Express submits that the pertinent issues are properly framed as follows:

1.     Under Arizona's choice of law rules, does California have a materially greater interest than New York in the enforceability of each Appellant's Arbitration Agreement and would California law apply absent the Arbitration Policy's New York choice of law clause, as necessary to disregard the parties' choice of law?

2.     If California law controls, do Appellants seek public injunctive relief, that is, would the general public be the primary beneficiary of – and would Appellants and the putative class of white employees they seek to represent only incidentally benefit from – an injunction requiring American Express to eliminate its allegedly discriminatory personnel policies, as required for Appellants to invoke the *McGill* rule?

3.     Does the Arbitration Policy's Individual Claims Only clause prohibit public injunctive relief in violation of *McGill* in light of its Remedies and Damages clause, which specifically authorizes an arbitrator to award any remedy or relief authorized by applicable law, and this Court's decision in *DiCarlo* holding that public injunctive relief is available in an individual lawsuit?

4.     Is Appellants' expansive reading of *McGill* and the definition of "public injunctive relief" consistent with the FAA and this Court's decision in *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 547 (9th Cir. 2021)?

5.     Are Appellants' Arbitration Agreements both procedurally and substantively unconscionable, as necessary to render them unenforceable under New York law?

6.     If any provisions of the Arbitration Policy are unconscionable, can they be severed and the remainder of the policy enforced?

## JURISDICTIONAL STATEMENT

American Express agrees with Appellants' jurisdictional statement.

## STATEMENT OF THE CASE

### A.     The Arbitration Policy

In 2003, American Express implemented the Arbitration Policy, pursuant to which all U.S. employees hired on or after June 1, 2003, were required to agree to submit all employment-related disputes to arbitration.  ER-117.

As revised in 2007, the Arbitration Policy provides, in part:

> The agreement between each individual and American Express to be bound by the Policy creates a contract requiring both parties to resolve all employment-related disputes that are based on a legal claim through final and binding arbitration. …

ER-123.

The Arbitration Policy contains an "Individual Claims Only" provision, which provides, in full:

**D. Individual Claims Only**
(1) All claims subject to arbitration under this Policy **MUST** be submitted on an individual basis.  **THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS OR COLLECTIVE BASIS.**  Claims may not be

-5-

joined or consolidated in arbitration with disputes brought by or against another individual, the Company, or certain Company employee benefit plans, unless agreed to in writing by all parties. No party subject to this Policy shall have any right to participate in a representative capacity or as a member of any class of claimants in a court of law pertaining to any claims subject to arbitration.

The arbitrator's authority to resolve disputes is limited to disputes between: a) an individual and American Express or an American Express employee benefit plan (including retirement, health and/or welfare plans or arrangements) alone; or b) the individual and [] another individual covered by this Policy alone and the arbitrator's authority to make awards is limited to awards to those parties alone. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding any other provision in this Policy (including, but not limited, to Section IX "Choice of Law and Severability"), and without waiving either party's right to appeal such decision, should any portion of this Section II.D(1) "Individual Claims Only" be deemed invalid, void or unenforceable, then the entire Policy (other than this sentence) shall be unenforceable and not apply.

ER-126 (emphasis in original).

The Arbitration Policy also contains a "Remedies and Damages" clause authorizing the arbitrator "to grant any remedy or relief (including attorneys' fees where authorized by statute) he or she deems just and equitable and which is authorized by and consistent with applicable law … ."  ER-132.

In addition, the Arbitration Policy contains a "Choice of Law" clause providing that it is to be governed by, construed, and enforced in accordance with the laws of the State of New York.  ER-135.

-6-

To commence arbitration under the policy, an employee must first submit a Demand for Arbitration, along with a $125 filing fee and proof of administrative exhaustion (where applicable), to American Express.  ER-127.  The Company is then obligated to file the Demand for Arbitration with the American Arbitration Association ("AAA") within 20 days.  *Id.*

## B. Appellants Agree to Arbitrate All Claims Arising Out of Their Employment with American Express

Netzel, Smith, and Langkamp all joined American Express after implementation of the Arbitration Policy.[1]  ER-119–20.  While Appellants have challenged the enforceability of their Arbitration Agreements under California law, neither Netzel, Langkamp, nor Smith lived or worked in California at any time during the course of their employment with American Express.  ER-29–30. Rather, Netzel lived and worked in Arizona, Smith lived and worked in Illinois and Arizona, and Langkamp lived and worked in Pennsylvania.  *Id.*[2]

Prior to the start of their employment, Netzel, Smith, and Langkamp were all notified that they would be required to agree to the Arbitration Policy if they joined the Company.  ER-29–30, 34–35, 37–39, 41.  Specifically, Netzel's and

---

[1] Netzel joined the Company in May 2010, Smith in March 2016, and Langkamp in April 2017.  ER-119–20.

[2] Larson did work remotely from her home in California.  ER-30.

-7-

Smith's offer letters, dated April 9, 2010, and February 4, 2016, respectively, state that:

> This offer is contingent on our receiving … A signed Employment Arbitration Policy Acknowledgement Form.
>
> *      *      *
>
> As a new or returning employee of American Express, you are subject to the terms of the American Express Employment Arbitration Policy. The Policy provides that arbitration is the final, exclusive and required forum for the resolution of all employment-related disputes that are based on a legal claim between you and the Company. The Policy and a form you must sign agreeing to abide by the Policy will be provided to you on your first day of employment. If you would like a copy of the Policy and the form in advance of your first day, please let me know.

ER-34–35, 37–39.

Similarly, in connection with his March 2, 2017 application for employment with American Express, Langkamp agreed that "arbitration is the final, exclusive and required forum for the resolution of all employment-related disputes that are based on a legal claim between American Express and me. … If I commence employment with American Express, I will continue to be subject to the terms of the Arbitration Policy."  ER-41.

Upon commencing employment, Netzel, Smith, and Langkamp each signed an American Express New Hire Employment Arbitration Policy Acknowledgment Form (the "Acknowledgment Form"), acknowledging that:

> I have received and been given the opportunity to review the American Express Employment Arbitration Policy. I understand that arbitration is the final and exclusive forum for the resolution of all employment-related disputes between American Express and me … .

ER-119–20, 159, 161, 163.[3]

### C. Appellants Commence a Putative Class Action for Employment Discrimination and Related Claims on Behalf of Themselves and a Putative Class of White Employees They Seek to Represent

On November 21, 2022, Appellants filed the Second Amended Complaint ("SAC") alleging that American Express unlawfully discriminated against them and other similarly situated employees based on their race (white) and retaliated against them for opposing discrimination in violation of Title VII, the California Fair Employment and Housing Act ("FEHA"), the California Unfair Competition Law ("UCL"), and California public policy. ER-181–219. As set forth in the SAC, Appellants allege that, beginning in 2018, American Express implemented a host of policies designed to unlawfully favor Black employees and applicants over their white counterparts, including in the areas of hiring, recruitment, promotions, compensation, training, work rules, and terminations, among others. ER-181–82, 187–94, 197–207. Appellants also claim that American Express began favoring

---

[3] In 2007, American Express expanded the Arbitration Policy to cover all employees hired before June 1, 2003, except for those who elected to opt out. ER-117. Larson, who joined the Company in 1993, did not opt out. ER-117–119. Accordingly, in January 2008, American Express notified Larson that she was covered under the policy. ER-119, 157. Larson does not challenge on appeal her coverage under the Arbitration Policy pursuant to the opt-out process.

Black customers and that these alleged practices "mislead the public into believing that AmEx does not have policies that give preferential treatment on the basis of race." ER-217. Appellants purport to seek public injunctive relief to remedy this alleged discrimination. ER-219.

### D. The District Court Dismisses the Second Amended Complaint and Orders Appellants to Arbitrate Their Claims

On December 12, 2022, American Express moved to compel Appellants to arbitrate their claims and to dismiss the SAC. ER-164–80. Appellants opposed the motion, arguing that their Arbitration Agreements violate the *McGill* rule and are unconscionable, and on other grounds not at issue on appeal. ER-47–66.

On August 3, 2023, the District Court granted the Company's motion, holding that New York law controls the enforceability of Appellants' Arbitration Agreements and that, in any case, Appellants do not seek public injunctive relief under *McGill*. ER-6–8. The court also rejected Netzel and Langkamp's claim of procedural unconscionability, including that American Express "trick[ed]" them into signing their Arbitration Agreements by concealing those agreements amongst a large stack of new-hire documents they were rushed through signing. ER-11–12. Specifically, the District Court found that, "[e]ven if the arbitration agreement was layered into a stack of dozens of onboarding documents, Netzel and Langkamp had prior notice that their employment was conditional on their assent to the arbitration agreement" via Netzel's offer letter and Langkamp's employment application. ER-

-10-

12.[4]  Having found no procedural unconscionability, the District Court declined to consider Appellants' claims of substantive unconscionability as moot, granted the Company's motion to compel, and dismissed the SAC.  ER-12–13.  This appeal followed.  ER-220–21.

## SUMMARY OF ARGUMENT

I.  Appellants' Arbitration Agreements are governed by New York law, not California law; accordingly, *McGill* has no application to this case.  The Arbitration Policy contains a New York choice of law clause that can only be set aside in favor of California law with respect to any Appellant if: (i) California has a materially greater interest than New York in the enforceability of that Appellant's Arbitration Agreement; and (ii) California would be the state of applicable law absent the Arbitration Policy's choice of law clause.  Neither Netzel, Langkamp, nor Smith ever lived or worked in California during their employment with American Express, rendering California law irrelevant to the enforceability of their Arbitration Agreements.  Even with respect to Larson, New York has a far greater interest in these issues than California.  American Express is headquartered in New York, employs over 7,000 people in the state, developed the allegedly discriminatory policies there, and carries out its obligations under the

---

[4]  The Court concluded that Smith did not advance a similar procedural unconscionability argument.  ER-11.  However, as noted above, Smith's offer letter contained the same advance notice of the Arbitration Policy as Netzel's.  ER-37–39.

Arbitration Policy there. By contrast, the Company employs fewer than 700 people in California and, other than being Larson's state of residence, has little connection to this case.

II. Even if California law governed the enforceability of Appellants' Arbitration Agreements, Appellants do not seek public injunctive relief and, therefore, cannot invoke the *McGill* rule. Under California law, public injunctive relief is relief that has the primary purpose and effect of benefiting the general public and that benefits the plaintiffs, if at all, only incidentally. Relief aimed primarily at redressing harm to individual plaintiffs – or to a class of similarly situated persons they seek to represent – is not public injunctive relief. Here, the primary beneficiaries of any relief enjoining the Company's allegedly discriminatory personnel policies would undoubtedly be Appellants themselves and the putative class of white American Express employees they seek to represent – not the general public. Accordingly, *McGill* is inapposite.

III. Even if the SAC could be construed as seeking public injunctive relief, the Arbitration Policy does not prohibit such relief and, therefore, does not violate *McGill*. To the contrary, the Arbitration Policy specifically authorizes the arbitrator to award "any remedy or relief" authorized by law, which includes public injunctive relief under the UCL. Thus, Appellants' claim that public injunctive relief is prohibited under the Arbitration Policy "cannot be squared with the clear

-12-

text of the [any-remedy] clause … ." *DiCarlo*, 988 F.3d at 1157. While Appellants argue that the Arbitration Policy's Individual Claims Only clause bars public injunctive relief, *DiCarlo* – a controlling decision of this Court that Appellants completely fail to address – and *McGill* itself make clear that a litigant seeking public injunctive relief does so on his or her own behalf and, therefore, can seek such relief in an individual lawsuit. As a result, the Individual Claims Only clause is entirely compatible with an award of public injunctive relief.

IV.    Even if the relief Appellants seek could be construed as public injunctive relief under *McGill*, implementing that relief would require the consideration of numerous American Express employment policies and practices and their application to thousands of employees and applicants across the country, which is "inherently incompatible … with the efficient, streamlined procedures that the FAA seeks to protect." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 547 (9th Cir. 2021) (internal citations and quotation marks omitted). Thus, insofar as *McGill* would encompass the requested relief, it is contrary to the FAA and must be rejected.

V.    Appellants' Arbitration Agreements are neither procedurally nor substantively unconscionable. With respect to procedural unconscionability, the District Court correctly rejected Netzel and Langkamp's claim that they were "tricked" into signing their Arbitration Agreements, as Netzel's employment offer

-13-

letter and Langkamp's employment application specifically state that they would be required to agree to the Arbitration Policy if they joined American Express. Similarly, none of the Arbitration Policy provisions Appellants challenge are substantively unconscionable. For example, the confidentiality clause ("Confidentiality Clause") is specifically limited to the arbitration proceedings themselves and, therefore, does not inhibit Appellants' ability to prepare their cases or otherwise unfairly advantage the Company. Likewise, the provision concerning the procedure for filing a demand for arbitration is not unconscionable because, contrary to Appellants' strained interpretation, it affords American Express no discretion to decline to arbitrate a claim. Finally, the unilateral modification clause is not unconscionable because American Express remains bound by the implied covenant of good faith and fair dealing in modifying the Arbitration Policy. Notably, the cases on which Appellants rely to challenge this provision are based on Texas law.

VI.   Even if any provisions of the Arbitration Policy were unconscionable, given the strong federal and state policy in favor of arbitration, the Court can and should sever those provisions and compel Appellants to arbitrate their claims.

## STANDARD OF REVIEW

On appeal of an order compelling arbitration, all questions of law are reviewed *de novo*. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535,

541 (9th Cir. 2021). This *de novo* review must be undertaken "with a healthy regard for the federal policy favoring arbitration." *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "When in doubt, both federal and state law point toward interpreting [an] [a]greement to permit arbitration." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021).

With respect to questions of fact, a district court's findings on a motion to compel arbitration may not be overturned unless they are clearly erroneous. *See Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1200 (9th Cir. 2021). This "standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011) (internal quotation marks omitted). A finding of fact is only clearly erroneous "if it is illogical, implausible, or without support in the record." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (*citing United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985).

## **ARGUMENT**

## I.   **THE ARBITRATION POLICY'S CHOICE OF NEW YORK LAW IS CONTROLLING**

A federal court exercising federal question and supplemental jurisdiction must apply the choice of law rules of the forum state – here, Arizona, which follows the Restatement (Second) of Conflict of Laws.  *See*, *e.g.*, *Effio v. FedEx Ground Package*, No. cv-08-1522-PHX-ROS, 2009 WL 775408, at *1 (D. Ariz. Mar. 20, 2009).   "Restatement § 187 [] reflects a strong policy favoring enforcement of [choice-of-law] provisions." *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005).   Under § 187, the parties' choice of law must be applied unless the application of that law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."  Restatement (Second) of Conflict of Laws § 187 (1971).

Thus, in determining whether the Arbitration Policy's New York choice of law clause should be given effect, the Court must determine which state's law would govern the enforceability of Appellants' Arbitration Agreements absent a controlling choice of law provision.  Under § 188 of the Restatement, that is the state with "the most significant relationship to the transaction and the parties," as determined by "(a) the place of contracting; (b) the place of negotiation of the

contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971).  The Arbitration Policy's New York choice of law clause can only be set aside if: (i) the application of New York law would contravene a fundamental policy of that state; and (ii) that state has a materially greater interest in the enforceability of Appellants' Arbitration Agreements than New York.

### A.    California Has No Connection to Netzel's or Smith's Arbitration Agreements

With respect to Netzel and Smith, none of the factors set forth in § 188 of the Restatement point to the choice of California law to determine the enforceability of their Arbitration Agreements: neither Netzel nor Smith alleges to have entered into or negotiated their Agreement in California; neither alleges that they or American Express had any obligation to perform under their Agreement in California; neither alleges that the subject matter of their Agreement was located in California; and neither alleges to have been domiciled in California at any time during the course of their employment with American Express.  Indeed, neither Netzel nor Smith claim to have ever lived, worked, or even set foot in California.  Rather, Netzel and Smith allege only that, from their offices in other states, they directed a substantial portion of their business efforts at California-based clients.  ER-70, 78.  However, that alleged fact is immaterial under the factors set forth in

Restatement § 188. Accordingly, California law has no bearing on the enforceability of Netzel's or Smith's Arbitration Agreement.[5]

By contrast, New York has the most significant relationship of any state to the transaction and the parties in this case: American Express is headquartered in New York, the underlying Complaint alleges that the Company's leadership developed discriminatory practices in New York, the Company employs over 7,000 people – and, hence, numerous potential members of the putative class – in New York, and the Company's obligations under the Arbitration Policy are carried out in New York. ER-28, 31, 181–84. *See*, *e.g.*, *Effio*, 2009 WL 775408, at *1-2 (applying Pennsylvania law to issue of unconscionability where arbitration agreement provided that it was to be governed by Pennsylvania law, defendant company was headquartered in Pennsylvania and a number of alleged acts at issue took place there, and Pennsylvania and Arizona share fundamental policy goal of promoting arbitration).

With respect to Netzel and Smith, the only state that could possibly have a more significant relationship to the transaction and the parties in this case is Arizona, where Netzel and Smith lived and worked. ER-29–30. However, Appellants have not argued that New York law concerning the enforceability of

---

[5] Langkamp asserts no connection whatsoever to California (or any other state). ER-80–81. Accordingly, the Arbitration Policy's New York choice of law clause controls Langkamp's agreement to arbitrate.

arbitration agreements is contrary to a fundamental policy of Arizona, nor could they, as New York and Arizona both have strong public policies favoring arbitration. *See*, *e.g.*, *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49 (N.Y. 1997); *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 248, 119 P.3d 1044, 1051 (Ariz. Ct. App. 2005). Accordingly, even if Arizona's connection to this case were stronger than New York's, under § 187 of the Restatement, the District Court's application of the Arbitration Policy's New York choice of law clause as to Smith and Netzel would still be proper.

Because New York law governs the enforceability of Smith's and Netzel's agreements to arbitrate, *McGill* has no application and cannot be invoked to invalidate their agreements.

### B. California Does Not Have a Materially Greater Interest than New York In Larson's Agreement to Arbitrate

While California has at least some connection to the claims advanced by Larson, who worked from her home in the state, ER-30, as with Netzel and Smith, New York's relationship to the parties and this case is far more substantial. As noted above, New York is where American Express is headquartered, where its leadership is alleged to have developed the allegedly discriminatory policies at issue, and where the Company's obligations under Larson's Arbitration Agreement must be carried out. ER-28, 31, 181–84. American Express also employs more than ten times as many people in New York (over 7,000) than it does in California

(less than 700), and, as such, the policies challenged by Larson have a far greater impact in New York than in California. ER-28. At a minimum, the contacts in this case are sufficiently dispersed such that determining the state of applicable law would be difficult absent a choice of law provision. Given Arizona's strong policy favoring enforcement of choice-of-law provisions, *see A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1036 (D. Ariz. 1989), the Arbitration Policy's choice of law clause should be honored with respect to Larson as well. *See* Restatement (Second) of Conflict of Laws § 187 (1971) ("The parties' power to choose the applicable law is subject to least restriction in situations where the significant contacts are so widely dispersed that determination of the state of the applicable law without regard to the parties' choice would present real difficulties.").

## II. APPELLANTS CANNOT INVOKE *MCGILL* BECAUSE THEY DO NOT SEEK PUBLIC INJUNCTIVE RELIEF

Even if California law controls, *McGill* has no application to this case because Appellants do not seek public injunctive relief. *See Hodges v. Comcast Cable Commc'ns*, LLC, 21 F.4th 535, 540-541 (9th Cir. 2021) (arbitration policy cannot be challenged as violative of *McGill* where plaintiffs do not seek public injunctive relief).

Conspicuously absent from Appellants' brief is any definition of public injunctive relief. Under California law, "public injunctive relief is relief that by and large benefits the general public ... and that *benefits the plaintiff, if at all, only*

*incidentally and/or as a member of the general public*." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021) (quoting *McGill*, 2 Cal. 5th at 955) (emphasis added). "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955.

Here, Appellants' 236-paragraph SAC focuses almost exclusively on the alleged harm done to them and the "hundreds of [other] white employees" who were allegedly "terminated or forced to leave the company" for discriminatory reasons. ER-183. Appellants specifically seek "final injunctive relief with respect to the Class and Subclass as a whole" to remedy the alleged discrimination they claim to have suffered. ER-196. Only in paragraph 231 do Appellants allege, for the first time, that the same allegedly discriminatory actions which they seek to enjoin for their own benefit, as well as the Company's alleged discrimination in favor of Black customers, are also "likely to mislead the public." ER-217. Based on this single passing allegation, Appellants claim to be seeking public injunctive relief.

Notwithstanding their own self-serving characterization of their request, it is indisputable that Appellants and the putative class would be the primary beneficiaries of an injunction restraining the Company from engaging in the

alleged discriminatory employment practices. Accordingly, Appellants' request is not one for public injunctive relief under *Hodges*, as "there is simply no sense in which [the relief sought by Appellants] could be said to primarily benefit the general public as a [] diffuse whole." *Hodges*, 21 F.4th at 549; *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) ("[T]he relief sought by Plaintiffs—to enjoin Uber from misclassifying its drivers as independent contractors—is [not public injunctive relief because it is] overwhelmingly directed at Plaintiffs and other rideshare drivers") (internal quotation marks omitted); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 755, 251 Cal. Rptr. 3d 269, 278 (Cal. Ct. App. 4th Dist. 2019) ("The public certainly has an interest in securing an employer's compliance with wage and hour laws. … But … any incidental benefit[s] to the public … do not transform Clifford's private UCL injunctive relief claim into a public one"); *Rogers v. Lyft, Inc.*, No. CGC-20-583685, 2020 WL 2532527, at *4 (Cal. Super. Ct. Apr. 30, 2020) ("The request for injunctive relief directing Lyft to reclassify its drivers is likewise directed to Plaintiffs and other Lyft drivers as individuals, not to the general public. … and therefore seeks private, not public, injunctive relief.").[6]

---

[6] Appellants' own characterization of their request as seeking a public injunction is immaterial. *See Hodges*, 21 F.4th at 548.

Appellants' reliance on *Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208 (Cal. Ct. App. 1st Dist. 2023), is unavailing. As the *Vaughn* court noted in concluding that the plaintiffs' class action employment discrimination claims sought public injunctive relief, it was following the approach taken by the Fourth District of the California Court of Appeal in *Mejia v. DACM Inc.*, 54 Cal.App.5th 691, 268 Cal. Rptr. 3d 642 (Cal. Ct. App. 4th Dist. 2020), and *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710 (Cal. Ct. App. 4th Dist. 2021). However, in *Hodges*, this Court explicitly rejected *Mejia* and *Maldonado* as wrongly decided because the injunctions at issue in those cases would have primarily benefited the plaintiff class rather than the general public. *See* 21 F.4th at 544. As the Court held:

> *Mejia*'s expanded version of the *McGill* rule rests on such a patent misreading of California law that we do not think it would be followed by the California Supreme Court. In particular, *Mejia* improperly disregards the key features of public injunctive relief set forth by the state high court in *McGill* …
>
>             \*     \*     \*
>
> As *McGill* explained, whether a requested injunction is public or private depends upon who are the *primary* beneficiaries, and the existence of an incidental benefit to the general public is not enough to classify that relief as non-waivable public injunctive relief.

*Hodges*, 21 F.4th at 544-545 (emphasis in original).

Notably, in following *Mejia* and *Maldonado*, the *Vaughn* court declared that it was not bound by this Court's decision in *Hodges* and was not following it. *See* 87 Cal. App. 5th at 231, n.3. Accordingly, Appellants' reliance on *Vaughn* before

-23-

this Court is entirely misplaced. Indeed, Appellants are effectively asking this Court to reject *Hodges* in favor of *Vaughn* – an action no panel can take. *See*, *e.g.*, *U.S. v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992) ("We decline Gay's and Porter's invitation to circumvent Ninth Circuit precedent. As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel.").

In any case, *Vaughn* was wrongly decided because it conflated the concept of a fundamental public policy with public injunctive relief. The former includes policies that inure to the benefit of the public at large and not just to a particular person, *see Rojo v. Kliger*, 52 Cal. 3d 65, 89, 801 P.2d 373, 388 (Cal. 1990), while the latter is restricted to relief that *primarily* benefits the general public and that benefits the plaintiff, if at all, *only incidentally*. *See McGill*, 2 Cal. 5th at 955. Under California law, preventing discrimination is a fundamental public policy, but because an injunction against any specific discriminatory conduct would primarily benefit the victims of that discrimination, such relief is private, not public, in nature. Here, the injunction Appellants seek would undoubtedly have the primary purpose and effect of redressing the alleged harm they and the putative class of white employees have allegedly suffered. Accordingly, Appellants cannot invoke the *McGill* rule to avoid arbitration.

-24-

## III. THE ARBITRATION POLICY IS NOT CONTRARY TO *MCGILL*

### A. The Arbitration Policy's "Any Remedy" Clause Authorizes Public Injunctive Relief

Even if Appellants' were seeking public injunctive relief, the Arbitration Policy authorizes such relief and, therefore, does not violate the *McGill* rule. Notably, Appellants ignore the Arbitration Policy's Remedies and Damages provision (section V.C), which specifically provides that the arbitrator "shall have authority to grant *any remedy or relief* … he or she deems just and equitable and which is authorized by and consistent with applicable law." ER-132 (emphasis added). Such broad authority clearly encompasses the power to issue a public injunction wherever such relief is authorized by and consistent with applicable law. *See*, *e.g.*, *Gonzalez-Torres v. Zumper, Inc.*, No. 19-CV-02183-PJH, 2019 WL 6465283 (N.D. Cal. Dec. 2, 2019). In *Zumper*, the court considered an arbitration agreement that, like American Express's Arbitration Policy, contained both an "individual claims only" and an "all remedies" provision. *See id.* at *2. As the court observed, those provisions were consonant with each other and consistent with the requirements of *McGill*:

> Read together, those terms provide that claims must be brought and arbitrated individually, and the arbitrator may award "any and all remedies authorized by law" — including public injunctive relief — when adjudicating those individually-asserted claims. Although a plaintiff may not assert claims on behalf of a class in arbitration, the Agreement does not prohibit plaintiff from being awarded public injunctive relief as a remedy for his individually-asserted claims in

arbitration. As such, the Agreement does not prevent plaintiff from obtaining public injunctive relief in any forum.

*Id.* at *8.

Likewise, here, because the Arbitration Policy "must be read as a whole, so as to give effect to every part," Appellants' claim that "[p]ublic injunctive relief is categorically unavailable … cannot be squared with the clear text of the [any remedy] clause … ." *DiCarlo*, 988 F.3d at 1157; *see also Angelo Lira v. Nat'l Distribution Centers, LLC*, No. EDCV21672JGBKKX, 2023 WL 8053857, at *6 (C.D. Cal. Apr. 19, 2023) (arbitration agreement authorizing arbitrator to award all remedies to which a party is entitled under applicable law encompasses public injunctive relief and is, therefore, enforceable under *McGill*); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) (same); *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15, 2018) (same); *Rivera v. Uniqlo California, LLC*, No. LACV1702848JAKJPRX, 2017 WL 6539016, at *15 (C.D. Cal. Sept. 8, 2017) (same).

### B. The Individual Claims Only Provision Does Not Prohibit Public Injunctive Relief

Not only does the Arbitration Policy's "any remedy" clause authorize public injunctive relief, nothing in the Individual Claims Only provision or elsewhere in the Arbitration Policy prohibits such relief. Consider, for example, the clause, "the

arbitrator's authority to make awards is limited to awards to [the] parties alone." ER-126.[7]  *McGill* itself makes clear that this clause does not interfere with an arbitrator's authority to issue a public injunction.  As the *McGill* court held, a plaintiff seeking:

> public injunctive relief in connection with [a UCL] action … is "filing" the "lawsuit" or "action" on his or her own behalf, not "on behalf of the general public." This remains true even if the person seeks, as one of the requested remedies, injunctive relief "the primary purpose and effect of" which is "to prohibit and enjoin conduct that is injurious to the general public."

2 Cal. 5th at 959 (internal brackets and citations omitted).

Thus, while the general public may be the primary *beneficiary of* a public injunction, an arbitral award granting such relief would nonetheless be an "*award to*" the claimant alone because, under *McGill*, he or she is bringing the arbitration "on his or her own behalf, not on behalf of the general public." *Id.*

This Court's decision in *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021), underscores this point.  In *DiCarlo*, the Court was tasked with deciding whether public injunctive relief is available in an "individual lawsuit," *i.e.*, "any lawsuit brought by a single plaintiff who represents only herself—no class actions,

---

[7] Appellants misquote this clause as "the arbitrator will not award relief for or against anyone who is not a party."  (Appellants Br., p. 17).  Those words do not appear anywhere in the Individual Claims Only clause, which is set forth in full on pages 5-6 above (nor do they appear elsewhere in the Arbitration Policy).

-27-

no mass actions, no derivative actions, etc." *Id.* at 1153.  As the Court explained, whether or not an action constitutes an "individual lawsuit" does not:

> hinge[] on the relief sought. … [An individual's] victory against [a] company could theoretically result in an injunction that broadly affects others, or a damages action so large as to run the company out of business.  Both results would have enormous impact on others … But it is still [the individual's] claim only.

*DiCarlo,* 988 F.3d at 1154.

Accordingly, the Court concluded, "a plaintiff bringing an individual lawsuit may seek public injunctive relief."  *DiCarlo*, 988 F.3d at 1156.  Thus, following *DiCarlo* and *McGill*, public injunctive relief can undoubtedly be included in an "award to" a claimant under the Arbitration Policy.  While Appellants argue that the Individual Claims Only clause bars public injunctive relief, they completely ignore *DiCarlo*, a controlling decision of this Court that directly contradicts their position.

Similarly, the clause restricting the preclusive effect of an arbitral award in any "dispute with anyone who is not a named party to the arbitration," ER-126, has no impact on a public injunction, where, by definition, relief is sought on behalf of the general public and such individualized disputes are not at issue.  *See*, *e.g.*, *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) ("[I]mposing or administering [a public] injunction does not require effectively fashioning individualized relief for non-parties."); *DiCarlo*, 988 F.3d at 1158

-28-

("Unlike private injunctive relief, [public injunctive relief] is not tailored to rectify individual wrongs.") (cleaned up); *McGill*, 2 Cal. 5th at 955 (same).

The cases upon which Appellants rely offer no support for their argument. For example, in *Blair v. Rent-A-Ctr., Inc.*, the arbitration agreement contained an unusual restriction prohibiting an arbitrator from awarding any "relief that would affect RAC account holders other than you." 928 F.3d 819, 823 (9th Cir. 2019). Because a public injunction would, by definition, affect people other than the claimant, such an injunction was foreclosed by that clause, rendering the arbitration agreement violative of *McGill*. Similarly, in *Adkins v. Comcast Corp.*, the arbitration agreement limited the arbitrator's authority to award relief "only to the extent necessary to provide relief warranted by [the] individual party's claim." No. 16-CV-05969-VC, 2018 WL 4846548, at *1 (N.D. Cal. Feb. 15, 2018), *aff'd sub nom. Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019). Here, by contrast, nothing in the Arbitration Policy prohibits the arbitrator from issuing relief that might "affect" others or limits that relief to the minimum "extent necessary."

### C. Any Doubts About the Arbitration Policy Should Be Construed in Favor of Enforceability

Finally, given the strong public policy in favor of arbitration, any doubts should be resolved in favor of construing the Arbitration Policy to permit public injunctive relief. *See DiCarlo*, 988 F.3d at 1158 ("Only an interpretation that

-29-

public injunctive relief remains available will render the arbitration provision lawful … And only this interpretation facilitates arbitration. … So both California law and the FAA tell us what to do next—construe the Agreement to abide by *McGill* and allow arbitration.") (internal citations and quotation marks omitted); *cf. Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1449 (9th Cir. 1986) ("[W]hen the language is ambiguous or unclear, any doubts about the scope of arbitration should be resolved in favor of arbitration."). Accordingly, even if Appellants' interpretation of the Arbitration Policy were plausible, it should still be rejected as inconsistent with the liberal policy favoring arbitration.

## IV. APPELLANTS' EXPANSIVE READING OF *MCGILL* IS CONTRARY TO THE FEDERAL ARBITRATION ACT

"[I]njunctions are not simply words on a page, and their compatibility with bilateral arbitration must be evaluated in light of how they would actually be implemented … ." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548 (9th Cir. 2021). Where the injunctive relief a party requests "would require a level of procedural complexity that is inherently incompatible with the informal, bilateral nature of traditional [] arbitration," that relief is inconsistent with the FAA and the "efficient, streamlined procedures [it] seeks to protect." *Id.* at 547.

Here, as set forth in the SAC, Appellants allege that American Express's hiring, recruitment, and promotion practices, its diversity, equity, and inclusion initiatives, its compensation reviews, its employee trainings, its work rules, and its

termination, retention, and layoff decisions, among various other policies and procedures, are infused – at every band level and across the entire country – with unlawful discrimination in favor of African Americans.  ER-181–82, 187–94, 197– 207.  To remedy this alleged discrimination, Appellants purport to seek an injunction requiring American Express – which employs over 60,000 people worldwide – to "eliminate policies, customs, and/or practices that discriminate or give preferential treatment to individuals or entities based on race."  ER-182, 219. Despite these "simpl[e] words on a page," implementing the relief Appellants seek would require  precisely the type of administrative complexity this Court rejected as incompatible with bilateral arbitration in *Hodges*.  Indeed, the relief Appellants seek here is even more complex than the injunctions this Court repudiated in *Mejia*, where the requested relief would have "requir[ed] the examination of the paperwork of [numerous] individual [motorcycle] sale[s] to determine whether the … requisite disclosures … were all included in a single document," and *Maldonado*, where it would have required an individualized inquiry to determine "whether any particular [] loan agreement was unconscionable due to its interest rate … under the circumstances of [each] case."  *Hodges*, 21 F.4th at 545-46. Administering those injunctions would be a modest task compared to the individualized review and analysis of myriad American Express personnel policies

and practices and their application to tens of thousands of current and prospective employees that would be required by the injunction Appellants seek.

Thus, even if Appellants were correct that the relief they seek falls within the scope of *McGill*, then *McGill* – insofar as it would reach this case – is contrary to the FAA and must be rejected. *See Hodges*, 21 F.4th at 547 ("[E]ven if we are wrong in concluding that the California Supreme Court would not follow *Mejia*'s and *Maldonado*'s broader reading of the *McGill* rule, [plaintiffs'] argument would still fail for the independent and alternative reason that their expansion of the *McGill* rule is preempted by the FAA.").

## V.  <u>THE ARBITRATION POLICY IS NOT UNCONSCIONABLE</u>

As explained above, New York law governs the enforceability of Appellants' Arbitration Agreements. Under New York law, absent exceptional circumstances, an agreement is void for unconscionability only if "the contract was both procedurally and substantively unconscionable when made." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017) (internal quotations omitted). Procedural unconscionability "concerns the contract formation process and the alleged lack of meaningful choice," while substantive unconscionability concerns "the content of the contract." *Id.* The party seeking to void an arbitration agreement bears the burden of establishing that it is unenforceable. *See*, *e.g.*,

-32-

*Fleming v. J. Crew*, No. 1:16-CV-2663-GHW, 2016 WL 6208570, at *4 (S.D.N.Y.

Oct. 21, 2016).[8]

> **A. Appellants' Agreements to Arbitrate Are Not Procedurally Unconscionable**
>
> **1. The Mandatory Nature of Netzel's and Langkamp's Arbitration Agreements Does Not Render Them Procedurally Unconscionable[9]**

Under New York law, an employment agreement is not unconscionable

merely because it is a required as a condition of employment. *See*, *e.g.*, *Victorio v.*

*Sammy's Fishbox Realty Co., LLC*, No. 14 CIV. 8678 CM, 2015 WL 2152703, at

*13 (S.D.N.Y. May 6, 2015) ("Even if the Agreement was a form contract offered

---

[8] If the Court were to determine that Arizona law governs the enforceability of Netzel and Smith's Arbitration Agreements, procedural and substantive unconscionability are both still relevant, although, under Arizona law, a contract provision can be voided for substantive unconscionability alone. *See Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 90 (Ariz. 1995). However, a party has a "high bar to meet in demonstrating that an arbitration agreement is unconscionable." *Shelby v. Brookdale Senior Living Inc.,* No. CV-20-00804-PHX-MTL, 2021 WL 718183, at *3 (D. Ariz. Feb. 24, 2021), *aff'd*, No. 21-15547, 2022 WL 1657245 (9th Cir. May 25, 2022) (internal citations and quotation marks omitted).

If the Court were to determine that California law governs the enforceability of Larson's Arbitration Agreement, then procedural and substantive unconscionability must be considered on a sliding scale. That is, where a party "has shown only a minimal degree of procedural unconscionability under California law, a high degree of substantive unconscionability is required" to render an agreement unenforceable. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863-64 (9th Cir. 2017).

[9] The District Court concluded that Larson and Smith did not raise a claim of procedural unconscionability, ER-11, and Larson does not articulate one on appeal. To the extent Smith argues procedural unconscionability, the analysis applicable to Netzel and Langkamp applies to him as well.

on a 'take-it-or-leave-i[t]' basis ... this is not sufficient under New York law to render the provision procedurally unconscionable.") (internal quotation marks omitted).

The same is true under Arizona law.  *See*, *e.g.*, *Monsanto v. DWW Partners, LLLP*, No. CV-09-01788-PHX-FJM, 2010 WL 234952, at *3 (D. Ariz. Jan. 15, 2010) (adhesive employment agreement containing arbitration clause fully enforceable unless contrary to reasonable expectations); *Equal Emp. Opportunity Comm'n v. Cheesecake Factory, Inc.*, No. CV08-1207PHXNVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009) ("take it or leave it" arbitration agreement not procedurally unconscionable).

Even under California law, "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis." *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127, 88 Cal. Rptr. 2d 664, 680 (Cal. Ct. App. 2nd Dist. 1999).  Rather, "[i]n the absence of any indication of oppression or surprise, the adhesive nature of [an] arbitration agreement … gives rise to a low degree of procedural unconscionability at most." *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021) (cleaned up).

Accordingly, absent proof of surprise, Netzel's and Langkamp's Arbitration Agreements bear at most a low degree of procedural unconscionability, even under California law.

### 2. The District Court's Finding that American Express Gave Appellants Advance Notice of the Arbitration Policy Is Not Clearly Erroneous

As noted above, a district court's factual findings on a motion to compel arbitration may not be overturned absent clear error. *See Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1200 (9th Cir. 2021). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985).

Here, the District Court specifically considered Netzel and Langkamp's claim that American Express "used a series of 'sharp tactics' … to 'trick' employees into signing the arbitration agreement" and that American Express "rushed [them] into signing the agreement amongst a large stack of documents during their onboarding processes." ER-11. Yet the court found that, even accepting Netzel and Langkamp's allegations as true, American Express provided them with advance notice that they would be required to agree to the Company's Arbitration Policy as a condition of employment – undermining any claim of surprise. ER-12. With respect to Netzel, the Court observed that his April 9, 2010

employment offer letter stated, "This offer is contingent on our receiving . . . [a] signed Employment Arbitration Policy Acknowledgement Form." *Id.* Similarly, with respect to Langkamp, the Court found that his employment application stated, "I agree that … If I commence employment with American Express, I will continue to be subject to the terms of the Arbitration Policy." *Id.* Accordingly, considering the record as a whole, the District Court found insufficient evidence to conclude that "either Netzel or Langkamp were subject to a coercive high pressure tactic that effectively eliminated their ability to make a meaningful choice." *Id.*[10]

Appellants argue that the District Court's findings of advance notice were erroneous with respect to Netzel because the "undisputed evidence" shows that he was not given his offer letter until his first day of employment. Appellants Br., pp. 34–35. That claim drastically misrepresents the record: while Netzel dated his signature on the letter as of May 3, 2010, the first day of his employment, the letter itself is dated nearly a month earlier, April 9, 2010. ER-34–35. And while Appellants represent here that "Netzel denies that the letter was delivered to him," Appellants Br., p. 35, the record is devoid of any such denial. Rather, in opposition to the Company's motion to compel arbitration, Netzel declared only that he did not "recall ever seeing [his offer letter] before." ER-69. That much

---

[10] As noted above, the same analysis would apply to Smith, whose offer letter contained the same advance notice of the Arbitration Policy as Netzel's. ER-37–39.

weaker obfuscation is itself dubious given that Netzel does not dispute having signed the letter and did not offer any alternative explanation as to how he was apprised of all the terms and conditions of his employment, such as his start date, salary, benefits, work location, etc. Accordingly, the District Court's refusal to conclude, based on Netzel's stated failure to recall a letter he signed 13 years ago, that he was not provided advance notice of the Company's Arbitration Policy was not clearly erroneous.

With respect to Langkamp, Appellants argue that the arbitration notice in his employment application was "buried in a mountain of fine print" and that it would be "unrealistic" "[t]o think that a prospective employee would read nine paragraphs in tiny, illegible font—before even being offered an interview—while simultaneously submitting countless job applications to potential employers … ." Appellants Br., pp. 37–38. Once again, Appellants misrepresent the record. There is no evidence that the document with the purportedly "tiny" font to which Appellants refer was the actual employment application Langkamp completed and signed. Rather, the record is clear that the document in question, ER-41, is a "true and correct copy of a screenshot from American Express's employment application management system showing the Arbitration Policy disclosures provided to Mr. Langkamp in his employment application." ER-30. Likewise there is no evidence in the record, nor do Appellants attempt to cite any outside the record, that

Langkamp was in the process of submitting "countless job applications" to other employers when he signed his American Express employment application. In any case, even if he had been, Langkamp's own failure to read American Express's employment application would not render his agreement to arbitrate unconscionable. *See*, *e.g.*, *Darnaa, LLC v. Google, Inc.*, No. 15-CV-03221-RMW, 2015 WL 7753406, at *2 (N.D. Cal. Dec. 2, 2015) ("[P]laintiff's failure to review the terms does not make the contract procedurally unconscionable.").[11] Accordingly, as with Netzel, the District Court's finding that Langkamp received advanced notice of the Arbitration Policy was not clearly erroneous.

Having found that Netzel and Langkamp received advance notice of the Arbitration Policy, the District Court properly concluded that their agreements to arbitrate were not procedurally unconscionable. *See Tamanaha v. DroneBase, Inc.*, No. B307866, 2022 WL 403917, at *10 (Cal. Ct. App. 2nd Dist. Feb. 10, 2022) ("[T]he arbitration agreement in the present case was *part of* plaintiff's offer letter. The arbitration agreement thus was not a provision foisted on the plaintiff after he accepted the position with DroneBase, but a part of the vehicle by which

---

[11] Appellants also misrepresent the record with respect to Langkamp's signing of the Arbitration Policy Acknowledgment Form upon the start of his employment. Appellants claim that "AmEx's own documents show that Mr. Langkamp *had to* review 51 pages in less than seven minutes and return to work." Appellants Br., p. 37 (emphasis added). In reality, the document in question shows only that Mr. Langkamp signed his onboarding documents seven minutes after opening them – not that his time to do so was limited in any way. ER-96.

he accepted that employment"); *United States v. Singulex, Inc.*, No. 4:16-CV-05241-KAW, 2019 WL 1472307, at *3 (N.D. Cal. Apr. 3, 2019) ("The fact that Plaintiff may not have 'been permitted to read the agreement' again on November 21, 2014 is not significant. She was notified in the offer letter that she had to sign the Agreement, and she was given a copy of the Agreement in advance of the deadline to sign the offer letter").

### B. The Arbitration Policy Is Not Substantively Unconscionable

As the District Court properly concluded, Appellants' failure to prove procedural unconscionability renders their Arbitration Agreements enforceable and the question of substantive unconscionability moot under New York law. However, even if the Court were to conclude that Arizona or California law controls, Appellants cannot establish the high degree of substantive unconscionability necessary to void their Arbitration Agreements, as none of the challenged provisions of the Arbitration Policy are unenforceable.

### 1. American Express Has No Discretion to Avoid Arbitration

As detailed above, the Arbitration Policy provides that, to commence arbitration, a claimant must first submit a Demand for Arbitration, along with a $125 filing fee and proof of administrative exhaustion (where applicable), to American Express. ER-127. While Appellants contend that this provision allows the Company to deny them access to any dispute-resolution forum, that claim rests

-39-

on a patent misreading of the Arbitration Policy. Under the clear terms of the Policy, American Express is required to file with the AAA, within 20 days of receipt, *any* Demand for Arbitration submitted with the required $125 filing fee and proof of administrative exhaustion (where applicable). *Id.* Contrary to Appellants' claim, the Company retains no discretion to decline to arbitrate a claim. ER-31.

None of the cases on which Appellants rely support their argument. Rather, each of those cases concerned a collective bargaining agreement ("CBA") that contained both an arbitration requirement and a clause reserving for the union, not the employee, the discretion to decide whether to pursue the employee's claims through arbitration. *See de Souza Silva v. Pioneer Janitorial Servs., Inc.*, 777 F. Supp. 2d 198, 206 (D. Mass. 2011) ("[I]n the instant case the Union had the sole authority to determine whether or not to pursue arbitration of an employee's claim, and it elected not to do so."); *Morris v. Temco Serv. Indus., Inc.*, No. 09 CIV 6194 WHP, 2010 WL 3291810, at *5 (S.D.N.Y. Aug. 12, 2010) ("As an individual union member, [plaintiff] did not have an unfettered right to demand arbitration of a discrimination claim under the CBA—instead, she had to rely on the Union to arbitrate her grievances.") (cleaned up); *Drake v. Hyundai Rotem USA, Corp.*, No. CIV.A. 13-0868, 2013 WL 4551228, at *5 (E.D. Pa. Aug. 28, 2013) ("[T]he language of the CBA states unequivocally that no individual employee may file a

-40-

grievance without the express approval of the Union.") (internal quotation marks omitted). Accordingly, the arbitration clauses in those CBAs were deemed unenforceable because they created a situation in which "an employee's federal claim may never end up being addressed." *Drake*, 2013 WL 4551228, at *5.

Here, by contrast, the Arbitration Policy provision challenged by Appellants exists solely for administrative convenience. American Express retains no discretion to decline to file a Demand for Arbitration submitted with the required filing fee and proof of administrative exhaustion (if applicable) – nor has it ever done so. ER-31.[12]

In reality, far from allowing American Express to avoid the adjudication of claims against the Company, the Arbitration Policy makes it easier for employees to arbitrate by lowering the financial barrier to doing so. For example, the Arbitration Policy: (i) reduces an individual's arbitration filing fee from the $350 provided for under the AAA's Employment Arbitration Fee Schedule to $125[13]; (ii) requires that American Express pay all other arbitration fees; and (iii) entitles

---

[12] And Appellants do not contend that American Express has ever objected to arbitrating a claim filed directly with the AAA.

[13] *See* AAA Employment/Workplace Fee Schedule, amended and effective January 1, 2023, available at: https://go.adr.org/employmentfeeschedule. This is also substantially lower than the $405 filing fee required to commence a civil action in the U.S. District Court for the District of Arizona, where Appellants filed their claims. *See* United States District Court, District of Arizona Fee Schedule, available at: https://www.azd.uscourts.gov/sites/azd/files/Fee%20Schedule.pdf.

employees to a "legal fee benefit" of up to $2,000 for attorneys' fees and other costs incurred in connection with the arbitration, to be reimbursed by American Express. ER-127, 133–34.

Appellants' contention that the Arbitration Policy's administrative exhaustion requirement "creates an impermissible hurdle," Appellants' Br., p. 43, likewise fails. While Appellants rely on *CACI Premier Tech., Inc. v. Faraci*, the court in that case merely noted that the parties had not incorporated Title VII's exhaustion requirement into their arbitration agreement. 464 F. Supp. 2d 527, 533–34 (E.D. Va. 2006). Here, by contrast, the Arbitration Policy specifically incorporates any applicable exhaustion requirements. ER-126–27. Far from creating an "impermissible hurdle" for Appellants, this provision merely mirrors any exhaustion requirements they would be required to satisfy before commencing an action in court.[14]

## 2. The Confidentiality Clause Does Not Impermissibly Favor American Express

While Appellants claim that the Confidentiality Clause "unfairly cloaks cases against [American Express] in secrecy," Appellants Br., p. 43, "confidentiality is a paradigmatic aspect of arbitration," *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008), and "is considered one of the largest benefits" that

---

[14] Appellants' argument is further undermined by the fact that they allege to have exhausted all applicable administrative remedies under federal and state law before filing this action. ER-185.

arbitration provides. *Utica Mut. Ins. Co. v. INA Reinsurance Co.*, No. 6:12-CV-194 (DNH/TWD), 2012 WL 13028279, at *6 n. 14 (N.D.N.Y. June 12, 2012). Indeed, the Supreme Court has repeatedly acknowledged the maintenance of confidentiality as a legitimate purpose of arbitration. *See*, *e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686, 130 S. Ct. 1758, 1776, 176 L. Ed. 2d 605 (2010) (vacating imposition of class arbitration because "under the [AAA] Rules, 'the presumption of privacy and confidentiality' that applies in many bilateral arbitrations 'shall not apply in class arbitrations' … thus potentially frustrating the parties' assumptions when they agreed to arbitrate."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348, 131 S. Ct. 1740, 1750, 179 L. Ed. 2d 742 (2011) ("Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult.").

Given the prominent role of confidentiality in arbitration, Appellants' attack on the Confidentiality Clause is really "an attack on the character of arbitration itself." *Guyden*, 544 F.3d at 385. However, under New York's "strong and longstanding policy favoring agreements to arbitrate," *Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*, 308 A.D.2d 261, 262, 762 N.Y.S.2d 607, 608 (N.Y. App. Div. 1st Dept. 2003), that attack must be rejected, as it has been by many courts. *See*, *e.g.*, *Am. Fam. Life Assurance Co. of New York v. Baker*, 778 F.

-43-

App'x 24, 27–28 (2d Cir. 2019); *Chandler v. Int'l Bus. Machines Corp.*, No. 21-CV-6319 (JGK), 2022 WL 2473340, at *7–8 (S.D.N.Y. July 6, 2022); *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017); *Kopple v. Stonebrook Fund Mgmt.*, LLC, 21 Misc. 3d 1144(A), 875 N.Y.S.2d 821 (N.Y. Sup. Ct. 2004), *aff'd*, 18 A.D.3d 329, 794 N.Y.S.2d 648 (2005).

Nor is the Confidentiality Clause unconscionable under California law. Rather, in *Sanchez v. Carmax Auto Superstores California, LLC*, the California Court of Appeal upheld a similar – in fact, somewhat broader – confidentiality clause providing that the "arbitration (including the hearing and record of the proceeding) be confidential." 224 Cal. App. 4th 398, 408, 168 Cal. Rptr. 3d 473, 482 (Cal. Ct. App. 2nd Dist. 2014). As this Court observed in *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017), *CarMax* is "directly on point." Specifically:

> The confidentiality provisions in both the Arbitration [Policy] at issue here and in *CarMax* … require that the arbitration, including the record of the proceeding, be confidential … Moreover, the California Court of Appeal rejected the same policy argument that Poublon makes here, namely that such confidentiality provisions "inhibit employees from discovering evidence from each other."

846 F.3d at 1266.

Appellants' reliance on *Ramos v. Superior Ct.*, 28 Cal. App. 5th 1042, 239 Cal. Rptr. 3d 679 (Cal. Ct. App. 1st Dist. 2018), *as modified* (Nov. 28, 2018), and *Storms v. Paychex, Inc.*, 2022 WL 2160414, at *15 (C.D. Cal. 2022), is unavailing.

In *Ramos*, the confidentiality clause at issue provided that "*all aspects* of the arbitration shall be maintained by the parties and the arbitrators in strict confidence." *28 Cal. App. 5th* at 1065 (emphasis added). Likewise, in *Storms*, the confidentiality clause required the parties to "maintain the confidentiality of *all matters related* [to]" the arbitration. 2022 WL 2160414, at *15 (emphasis added). Such broad language, the *Ramos* and *Storms* courts concluded, prohibited the plaintiffs from contacting potential witnesses, investigating their claims, and engaging in other aspects of informal discovery, thereby preventing them from effectively preparing their cases. *See* Cal. App. 5th at 1065; 2022 WL 2160414, at *15.

Here, by contrast, the Arbitration Policy's Confidentiality Clause is specifically limited to the arbitration "proceedings," ER-129, and has no bearing on Appellants' ability to contact potential witnesses, investigate their claims, or otherwise engage in informal discovery. Such a narrowly tailored confidentiality clause does not interfere with a party's ability to prepare its case and is not unconscionable under California law. *See Sanchez*, 224 Cal. App. 4th at 408 (rejecting claim that confidentiality clause would "inhibit employees from discovering evidence from each other"); *Poublon*, 846 F.3d at 1267, n.4 ("[T]he scope of the confidentiality provision in the dispute resolution provision is narrower than in our prior cases, which mitigates [the] concern that plaintiffs will

be limited in their ability to share information."); *cf. Asher v. E! Ent. Television, LLC*, No. CV 16-8919-RSWL-SSX, 2017 WL 3578699, at *7 (C.D. Cal. Aug. 16, 2017) (clause requiring parties to maintain confidentiality of all materials exchanged in discovery would not interfere with plaintiff's ability to investigate, contact witnesses, and prepare her case).[15]

Finally, this Court "has cautioned against invalidating arbitration agreements on the basis of confidentiality provisions, noting that '[parties] are free to argue during arbitration that the confidentiality clause is not enforceable.'" *Melez v. Kaiser Found. Hosps., Inc.,* No. 2:14-CV-08772-CAS, 2015 WL 898455, at *11 (C.D. Cal. Mar. 2, 2015) (*quoting Kilgore v. KeyBank, N.A.,* 718 F.3d 1052, 1059 n. 9 (9th Cir.2013)). Here, the Confidentiality Clause specifically states that it does not apply where "applicable law provides to the contrary." ER-129. Accordingly, following *Kilgore*, "[Appellants] are free to argue during arbitration," 718 F.3d at 1059, that, under applicable law, the Confidentiality Clause is not enforceable.[16]

---

[15] Like *Ramos* and *Storms, Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), is also inapposite. As this Court noted in *Poublon, Ting* relied on a single D.C. Circuit decision and has little relevance after the California Court of Appeal's decision in *CarMax*. 846 F.3d at 1267.

[16] While Appellants ignore Arizona law altogether, as noted above, if New York law is not controlling, then Arizona law, not California law, governs Netzel's and Smith's Arbitration Agreements. Under Arizona law, the Confidentiality Clause is not unconscionable. *See*, *e.g.*, *Shelby v. Brookdale Senior Living Inc.*, No. CV-20-

Appellants' "repeat player" argument is similarly flawed. "Although California courts have taken notice of the repeat player effect, [whereby a party may gain an advantage by repeatedly appearing before the same group of arbitrators,] they have concluded that it is insufficient to render [an] arbitration agreement unconscionable." *Serrano v. Macys W. Stores, Inc.*, No. CV202434MWFJEMX, 2020 WL 6083439, at \*6 (C.D. Cal. July 9, 2020); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006) ("[M]erely raising the 'repeat player effect' claim, without presenting more particularized evidence demonstrating impartiality, is insufficient under California law to support an unconscionability finding."); *Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 178, 116 Cal. Rptr. 2d 671, 679 (Cal. Ct. App. 2nd Dist. 2002) (same). Those cases in which the repeat player effect was found to have unfairly prejudiced one party are inapposite here. For example, *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130, 1138 (9th Cir. 2019), concerned an arbitration

---

00804-PHX-MTL, 2021 WL 718183, at \*4 (D. Ariz. Feb. 24, 2021), *aff'd*, No. 21-15547, 2022 WL 1657245 (9th Cir. May 25, 2022) (upholding under Arizona law confidentiality clause stating that the "'arbitration Procedure shall be conducted on a confidential basis.' [] This appears to be a standard confidentiality agreement and it applies equally to both parties."). While the district court in *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1111 (D. Ariz. 2014), held the Confidentiality Clause unconscionable and severed that provision before compelling arbitration, as American Express explained in its briefing to the District Court, *Longnecker* rested on a misinterpretation of California law – which it then analogized to Arizona law – and was wrongly decided in light of *CarMax* and *Poublon*. ER-175–78.

proceeding in which the arbitrator was a co-owner of the arbitral organization, JAMS, and "focuse[d] on the unique economic incentives of a JAMS co-owner to find in favor of repeat clients." *EHM Prods., Inc. v. Starline Tours of Hollywood, Inc.*, 1 F.4th 1164, 1172 (9th Cir. 2021). Here, the Arbitration Policy provides that all arbitrations are to be administered by the AAA, ER-127, and Plaintiffs have not even alleged, let alone cited any evidence to suggest, that any arbitrators among the AAA's roster of neutrals have an ownership interest in the organization. Moreover, the Arbitration Policy itself and the rules of the AAA ensure that any arbitrator selected to hear a dispute is neutral and free of any conflicts of interest.[17]

### 3. American Express's Right to Modify the Arbitration Policy Is Bounded by the Duty of Good Faith and Fair Dealing

Appellants argue that the Arbitration Policy's unilateral modification clause is substantively unconscionable because, under California law, the duty of good faith and fair dealing does not save such a clause where an employer's right to modify the agreement is not expressly prohibited with respect to claims that have

---

[17] For example, the Arbitration Policy provides that the AAA "will issue a list of neutral arbitrators who have been prescreened by the AAA for potential conflicts of interest." ER-128. Under the Arbitration Policy, both parties have an equal role in selecting the arbitrator to hear their dispute, namely, by striking and ranking the potential arbitrators proposed by the AAA. *Id.* To further ensure impartiality, before an arbitrator is appointed by the AAA to hear a dispute, they must complete a General Arbitrator Oath Form acknowledging their obligation of impartiality and disclosing to the parties any potential conflicts of interest. SER-59–61. Under Rule 16(a)(1) of the AAA rules, the arbitrator is "subject to disqualification for: i. partiality or lack of independence … ." SER-38.

already accrued.  As an initial matter, New York law applies to this question and Appellants have not cited any authority to suggest that such a clause is invalid under New York law (nor are Appellees aware of any).[18]

But even under California law Appellants are wrong.  Appellants cite *Lyons v. NBCUniversal Media, LLC*, No. CV193830MWFJEMX, 2019 WL 6703396, at *10 (C.D. Cal. Sept. 27, 2019), in support of their argument.  However, *Lyons* specifically relied on the decision in *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1434, 140 Cal. Rptr. 3d 38, 43 (Cal. Ct. App. 2nd Dist. 2012), and, as subsequent courts have observed, "the court in *Peleg* applied Texas, not California, law." *Chess v. CF Arcis IX LLC*, No. 20-CV-01625-CRB, 2020 WL 4207322, at *10 (N.D. Cal. July 22, 2020).  Specifically, *Peleg* held, "Under Texas law, a modification provision must contain a savings clause expressly exempting all claims, accrued or known, from contract changes … [Accordingly,] Texas law dictates that the Agreement is illusory and unenforceable." 204 Cal. App. 4th at 1467.  As such, *Peleg* and its progeny, including *Lyons*, are inapposite.

"Unlike Texas's more stringent requirement, in applying the FAA under California contract law … a unilateral modification provision that is silent as to

---

[18] Under New York law, "every contract encompasses the implied duty of good faith and fair dealing … [and] New York courts consider whether a [party's] behavior is reasonable before finding a contract illusory." *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84–85 (2d Cir. 2013).

whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims." *Chess*, 2020 WL 4207322, at *10. Here, while the unilateral modification clause expressly excludes existing disputes, ER-134, it is silent as to claims that have accrued or are known to the Company and, accordingly, the implied covenant of good faith limits the Company's right to modify the Arbitration Policy with respect to such claims.

In any case, this Court "has explained that an unconscionable unilateral modification clause in an arbitration agreement does not make the arbitration provision or the contract as a whole unenforceable." *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021) (cleaned up).

## VI.   ANY UNCONSCIONABLE PROVISIONS OF THE ARBITRATION POLICY CAN AND SHOULD BE SEVERED

Even if the Court were to determine that any of the challenged Arbitration Policy provisions are unconscionable, the Court can and should sever those provisions and compel Appellants to arbitrate their claims. *See*, *e.g.*, *Yost v. Everyrealm, Inc.*, No. 22 CIV. 6549 (PAE), 2023 WL 2859160, at *10 (S.D.N.Y. Apr. 10, 2023) ("[E]ven if the contractual cost-splitting provision … were unconscionable … the remedy under New York law would be to excise the cost-splitting provision. It would not be, as Yost has argued, to invalidate the arbitration agreement."); *Carrillo v. Gruma Corp.*, No. EDCV162276JGBSPX, 2017 WL 11631614, at *7 (C.D. Cal. Mar. 14, 2017) ("[M]indful of the admonition by

California courts that the strong preference is to sever, the Court finds that severance is appropriate and that the Agreement is enforceable once the carve-out, the unilateral modification provisions, and the waiver of class action claims are extirpated.").

## **<u>CONCLUSION</u>**

For the foregoing reasons, the District Court properly granted Appellee's motion to compel arbitration and its decision should be affirmed.

Dated: January 10, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*/s/ John E. Kiley*
_____
John E. Kiley
Adam Pekor
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
jkiley@sheppardmullin.com
apekor@sheppardmullin.com

Todd E. Lundell
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Tel.: (714) 424-2845
Fax: (714) 428-5947
tlundell@sheppardmullin.com

*Attorneys for Appellee*
*American Express Company, Inc.*

## STATEMENT OF RELATED CASES

American Express is not aware of any related cases pending before this Court.

Dated: January 10, 2024   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*/s/ John E. Kiley*
_____
John E. Kiley
Adam Pekor
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
jkiley@sheppardmullin.com
apekor@sheppardmullin.com

Todd E. Lundell
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Tel.: (714) 424-2845
Fax: (714) 428-5947
tlundell@sheppardmullin.com

*Attorneys for Appellee*
*American Express Company, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certify that pursuant to Federal Rule of Appellate Procedure 32(a) and Ninth Circuit Rule 32-1, this brief uses a 14-point proportionally-spaced font an contains 12,010 words according to the word count feature of Microsoft Word, exclusive of the matters that may be omitted under Rule 32(f).

Dated: January 10, 2024        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*/s/ John E. Kiley*
_____
John E. Kiley
Adam Pekor
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
jkiley@sheppardmullin.com
apekor@sheppardmullin.com

Todd E. Lundell
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Tel.: (714) 424-2845
Fax: (714) 428-5947
tlundell@sheppardmullin.com

*Attorneys for Appellee*
*American Express Company, Inc.*