No. 23-16083

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

BRIAN NETZEL, *et al*,

*Plaintiffs - Appellants*,

*v.*

AMERICAN EXPRESS COMPANY,

*Defendant - Appellee.*

---

Appeal from the United States District Court
for the District of Arizona
No. 2:22-cv-01423-SMB
The Honorable Susan M. Brnovich

---

**REPLY BRIEF OF APPELLANTS**

---

David Pivtorak (CA Bar No. 255943)
THE PIVTORAK LAW FIRM
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130
Facsimile: (877) 748-4529
david@piv4law.com

Aaron T. Martin (AZ Bar No. 028358)
MARTIN LAW & MEDIATION
PLLC
2415 East Camelback, Suite 700
Phoenix, AZ 85016
Telephone: (602) 812-2680
Facsimile: (602) 903-5483
aaron@martinlawandmediation.com

*Attorneys for Plaintiffs-Appellants*

## <u>TABLE OF CONTENTS</u>

Page(s)

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 2

I.    AMEX'S RESTATEMENT § 188 ANALYSIS FAILS TO ADDRESS THE RELEVANT ISSUE—FORCED WAIVER OF THE RIGHT TO SEEK A PUBLIC INJUNCTION ...................................... 2

    A.    The Restatement § 188 Factors Weigh Heavily in Favor of Applying California Law for Plaintiff Larson ....................... 3

    B.    California Has the Closest Relationship to the Claims Made by Plaintiffs Netzel and Smith for the Question of Public Injunctive Relief ................................................................. 4

II.    THE PUBLIC INJUNCTION PLAINTIFFS REQUEST WOULD PRIMARILY BENEFIT THE GENERAL PUBLIC ............................. 7

    A.    Workplace Discrimination is a Unique Evil Whose Elimination Has Been Declared a Public Good ...................... 7

    B.    Plaintiffs Seek a Public Injunction Consistent with *Hodges* ............... 8

    C.    Enjoining Business Establishments from Engaging in Race Discrimination Benefits the General Public ......................... 10

III.    THE AGREEMENT PROHIBITS PUBLIC INJUNCTIVE RELIEF .. 11

    A.    The Agreement Restricts Plaintiffs to Individual Relief Only ............ 13

    B.    The Agreement Prohibits Public Injunctive Relief by Limiting an Injunction's Preclusive Effect ........................... 15

IV.    THE PUBLIC INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS IS NOT CONTRARY TO THE FAA ............................. 18

V.    THE AGREEMENT IS PROCEDURALLY UNCONSCIONABLE DUE TO UNFAIR SURPRISE ................................................... 21

A.    The Record Shows Netzel and Smith Did Not Know They Would Be Subject to Arbitration Before Their Employment ............22

B.    AmEx Presented No Evidence That It Notified Langkamp About Arbitration ...................................................24

**VI.    THE AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE BECAUSE IT IS ONE-SIDED ....................................25**

A.    The Unambiguous Language of the Agreement Allows AmEx to Reject Valid Claims ........................................25

B.    The Covenant of Good Faith and Fair Dealing Cannot Save the Unilateral Modification Provision.........................27

C.    The Confidentiality Provision Gives AmEx an Unfair Advantage........................................................29

**VII.    CONCLUSION ........................................................31**

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
   914 F.Supp.2d 256 (E.D.N.Y. 2012) ........................................................ 24

*Angelucci v. Century Supper Club*,
   41 Cal.4th 160 (2007) ............................................................................. 10

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   24 Cal.4th 83 (2000) ........................................................................ 27, 30

*Barba v. Seung Heun Lee*,
   2010 WL 11515658 (D. Ariz. 2010) ......................................................... 3

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ........................................................... passim

*Brennan v. Bally Total Fitness*,
   198 F.Supp.2d 377 (S.D.N.Y. 2002) ...................................... 23, 25, 28, 30

*Brennon B. v. Superior Court*,
   57 Cal.App.5th 367 (2020) ...................................................................... 10

*Broughton v. Cigna Healthplans of California*,
   21 Cal.4th 1066 (1999) ................................................................. 15, 16, 18

*Bushley v. Credit Suisse First Boston*,
   360 F.3d 1149 (9th Cir. 2004) ................................................................. 21

*C.D. Anderson & Co., v. Lemos*,
   832 F.2d 1097 (9th Cir. 1987) ................................................................. 17

*City of Emeryville v. Robinson*,
   621 F.3d 1251 (9th Cir. 2010) ................................................................. 23

*Cruz v. PacifiCare Health Sys., Inc.*,
   30 Cal.4th 303 (2003) ........................................................................ 15, 16

*Davis v. Advanced Care Technologies, Inc.*,
2007 WL 2288298 (E.D. Cal. 2007) ...................................................... 3, 4

*DeGraff v. Perkins Coie LLP*,
2012 WL 3074982 (N.D. Cal. 2012) ......................................................... 30

*DiCarlo v. MoneyLion, Inc.*,
988 F.3d 1148 (9th Cir. 2021) .................................................... 1, 11, 12, 13

*Effio v. FedEx Ground Package*,
2009 WL 775408 (D. Ariz. 2009) ............................................................... 6

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ..................................................................... 16

*Greenwich Ins. Co. v. Media Breakaway, LLC*,
2009 WL 2231678 (C.D. Cal. 2009) ......................................................... 17

*Headlands Reserve, LLC v. Center For Natural Lands Management*,
523 F.Supp.2d 1113 (C.D. Cal. 2007) ....................................................... 15

*Heart of Atlanta Motel, Inc. v. United States*,
379 U.S. 241 (1964) .................................................................................. 11

*Hodges v. Comcast Cable Communications, LLC*,
21 F.4th 535 (9th Cir. 2021) ............................................................. passim

*Hope v. Early Warning Services LLC*,
2023 WL 5505020 (C.D. Cal. 2023) ........................................................... 6

*In re Jauregui*,
2013 WL 1249026 (Bankr. C.D. Cal. 2013) ............................................. 17

*Ingalls v. Spotify USA, Inc.*,
2016 WL 6679561 (N.D. Cal. 2016) ................................................... 27, 28

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
921 F.3d 803 (9th Cir. 2019) ...................................................................... 2

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) .................................................... 27

*Jack v. Ring LLC*,
91 Cal.App.5th 1186 (2023) .................................................. 13, 14, 17, 18

*LaChapelle v. Omni Hotels Management Corporation*,
2021 WL 3373337 (N.D. Cal. 2021) ......................................... 28

*Longnecker v. Am. Express Co.*,
23 F.Supp.3d 1099 (D. Ariz. 2014) ...................................... 29, 30

*Maldonado v. Fast Auto Loans, Inc.*,
60 Cal.App.5th 710 (2021) ...................................................... 9, 18

*McGill v. Citibank, N.A.*,
2 Cal.5th 945 (2017) ......................................................... 9, 12, 18

*Mejia v. DACM Inc.*,
54 Cal.App.5th 691 (2020) .................................................... 9, 18

*OTO, L.L.C. v. Kho*,
8 Cal.5th 111 (2019) ............................................................... 23

*Ramos v. Superior Court*,
28 Cal.App.5th 1042 (2018) ..................................................... 29

*Remedial Constr. Services, LP v. AECOM, Inc.*,
65 Cal.App.5th 658 (2021) ...................................................... 14

*Rojo v. Kliger*,
52 Cal.3d 65 (1990) .......................................................... 7, 8, 9

*Sanfilippo v. Match Group LLC*,
2021 WL 4440337 (9th Cir. 2021) .......................................... 27

*Stevenson v. Superior Ct.*,
16 Cal.4th 880 (1997) .......................................................... 7, 8

*Storms v. Paychex, Inc.*,
    2022 WL 2160414 (C.D. Cal. 2022) ......................................................... 29

*Stromberg v. Qualcomm Incorporated,*
    14 F.4th 1059 (9th Cir. 2021) ....................................................................... 4

*U.S. v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ............................................................... 21, 22

*Vandenberg v. Superior Court*,
    21 Cal.4th 815 (1999) ................................................................................ 16

*Vaughn v. Tesla, Inc.*,
    87 Cal.App.5th 208 (2023) ...................................................................... 8, 9

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187 .................................................. 6

Restatement (Second) of Conflict of Laws § 188 ................................. 2, 3, 4, 5, 6

## **INTRODUCTION**

Plaintiffs prevail in this appeal because AmEx's arbitration agreement (the "Agreement") must be interpreted under California law, which bars the Agreement's attempt to prohibit public injunctive relief. AmEx's argument fails to apply the Restatement correctly under Ninth Circuit law, with respect to the choice of law question, and merely repeats the reversible errors of the district court.

Further, under California law, the *prospective* relief plaintiffs seek is considered a public good, and thus considered public injunctive relief, even if individual plaintiffs also benefit incidentally from that injunction. AmEx's reliance on *DiCarlo* for the unremarkable premise that "individual lawsuits" can seek public injunctive relief overlooks the difference between the agreement in *DiCarlo* and the one here. AmEx's Agreement prohibits public injunctive relief because it limits Plaintiffs not just to individual arbitrations but individual *relief*. It also eviscerates the policy behind public injunctions by eliminating their preclusive effect.

The public injunctive relief that Plaintiffs seek also does not contravene the Federal Arbitration Act ("FAA") because it provides forward-looking relief without having to evaluate the individual claims of non-parties. AmEx ignores this Court's decision in *Blair* in this context, citing it only for the orthogonal proposition relating to its particular arbitration language.

Finally, the Agreement is procedurally unconscionable because the

1

uncontroverted record shows Plaintiffs were not given fair notice by AmEx that they would be subject to arbitration. The Agreement is also substantively unconscionable because its unambiguous language allows AmEx to unilaterally reject valid claims. Additionally, it gives AmEx the unfettered right to modify the arbitration policy for accrued claims and prevents employees from sharing information while permitting AmEx to rely on institutional knowledge developed from prior arbitrations. This illegality permeates the entire Agreement, rendering it void. The district court must be reversed.

## **ARGUMENT**

### I. **AMEX'S RESTATEMENT § 188 ANALYSIS FAILS TO ADDRESS THE RELEVANT ISSUE—FORCED WAIVER OF THE RIGHT TO SEEK A PUBLIC INJUNCTION**

Courts determining which state would be the state of the applicable law, in the absence of an effective choice of law provision, are required to analyze the Restatement § 188 factors in order of "their relative importance with respect to the *particular issue." Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 809 (9th Cir. 2019) (emphasis added). The commentary to the Restatement further advises that "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement (Second) of Conflict of Laws § 188 (1988), cmt. d. [1]

---

[1] All further references to the Restatement (Second) of Conflict of Laws will be cited as the "Restatement."

AmEx completely fails to engage with, or even acknowledge, the issue in question—whether the Agreement can force Plaintiffs to waive their right to seek public injunctive relief. AmEx also ignores the requirement that the choice of law analysis must be performed individually for each plaintiff. *Barba v. Seung Heun Lee*, 2010 WL 11515658, at *11 (D. Ariz. 2010). It is only by eliding these crucial elements that AmEx concludes New York law must apply. But when the Restatement § 188 factors are considered with the specific issue—and each plaintiff—in mind, they require application of California law.

### A. The Restatement § 188 Factors Weigh Heavily in Favor of Applying California Law for Plaintiff Larson

*Davis v. Advanced Care Technologies, Inc.*, 2007 WL 2288298 (E.D. Cal. 2007), is directly on point. *Davis* involved a non-compete agreement between a Connecticut-based pharmaceutical company and one its former salespeople who worked out of California. *Id.* at *8. The district court held that—with respect to the issue in question, the enforceability of non-compete clauses in contracts—Connecticut law contradicted a fundamental California policy prohibiting such covenants. *Id.* at *9. With this issue in mind, the district court then analyzed the Restatement § 188 factors and determined that California should be the state of applicable law.

The plaintiff in *Davis* lived and worked in California. *Id.* at *8. He carried out his sales duties in California. *Id.* The only connection to Connecticut was that part

3

of the plaintiff's contract was negotiated there and was where the employer was located. *Davis,* 2007 WL 2288298, at *8. But the most important factors, for the issue of the non-compete clause, all related to California. As the *Davis* court emphasized, "California's strong interest and well-settled public policy of protecting resident employees from out-of-state anticompetitive conduct…weighs strongly in favor of applying California [law]." *Id.* at *9.

Like the plaintiff in *Davis*, Nancy Larson was also based in California and carried out her employment there. ER 84. The subject matter and performance of her duties centered around California. *Id.* Additionally, AmEx's discriminatory policies and practices were directed at Ms. Larson in California. *Id.* at 84, 204-207. They also targeted Ms. Larson's customers in California. *Id.* Finally, the Agreement's prohibition on Ms. Larson seeking a public injunction restricts California's ability to stop this illegal conduct from occurring within its borders. Given that issue, the Restatement § 188 factors require the application of California law for Ms. Larson.

## B. California Has the Closest Relationship to the Claims Made by Plaintiffs Netzel and Smith for the Question of Public Injunctive Relief

Similar reasoning applies for Plaintiffs Netzel and Smith. This Court reviews the choice of law issue de novo and the district court's underlying factual findings for clear error. *Stromberg v. Qualcomm Incorporated,* 14 F.4th 1059, 1066 (9th Cir. 2021). The district court found that both Netzel and Smith serviced California

clients. ER 8. AmEx does not dispute that, nor the fact that its policies would have targeted Plaintiffs' sales work, a substantial part of which was directed at California residents.

AmEx merely asserts, in conclusory fashion, that these facts are "immaterial under the factors set forth in §188." Appellee Br. 18. But it is AmEx's laundry-list of non-sequiturs, such as how many people AmEx employs in New York and where its policies were developed, that have nothing to do with the five factors specified in Restatement § 188—especially relating to the question of the waiver of the right to seek a public injunction.

The Restatement commentary is instructive:

> [T]he state where performance is to occur has an obvious interest in the question of whether this performance would be illegal… When both parties are to perform in the state, this state will have so close a relationship to the transaction and the parties that it will often be the state of the applicable law even with respect to issues that do not relate strictly to performance.

Restatement § 188 (1988), cmt. e.

When Plaintiffs directed their sales efforts to California residents, California had the most significant interest in the legality of the conduct and policies involved. It is also the nexus of where the performance took place between AmEx, Plaintiffs, and the client. California has the closest relationship to all three with respect to these transactions and must be able to control them if they involve unlawful race

discrimination. It, therefore, is the only logical candidate as the state of the applicable law.

AmEx does not cite a single case that supports its reasoning under the relevant facts. *Effio v. FedEx Ground Package*, 2009 WL 775408 (D. Ariz. 2009), does not help it. *Effio* held that Pennsylvania law was not "contrary to fundamental policy of Arizona" under Restatement § 187(b) and thus did not need to address the Restatement § 188 factors. *Id.* at *2.

Here, on the other hand, New York law is contrary to a fundamental policy of California which has a materially greater interest than New York in the determination of the particular issue, contractual waivers of the right to seek public injunctive relief, as New York does not prohibit such waivers. See *Hope v. Early Warning Services LLC*, 2023 WL 5505020, at *8 (C.D. Cal. 2023) ("California has a materially greater interest than New York in enforcing its policy of refusing to permit contractual terms that eliminate this right."). Because AmEx's conduct, as relevant to the issue, was directed at Plaintiffs and their client-base in California, it would be the state of the applicable law in the absence of a choice of law by the parties pursuant to Restatement § 187(b).

///

///

## II. THE PUBLIC INJUNCTION PLAINTIFFS REQUEST WOULD PRIMARILY BENEFIT THE GENERAL PUBLIC

### A. Workplace Discrimination is a Unique Evil Whose Elimination Has Been Declared a Public Good

Plaintiffs seek both prospective public injunctive relief that benefits the general public as well as injunctive relief specific to themselves. *Compare* ER 219 at ¶ F *with* ER 196, 219 at ¶ C. AmEx's argument that this relief is not public injunctive relief tries to confuse the Court by conflating the two independent remedies plaintiffs seek. But Plaintiffs' request in the Second Amended Complaint to eliminate AmEx's racially discriminatory policies would serve to *primarily* benefit the general public rather than individual victims.

AmEx's arguments to the contrary directly contravene the findings of California's Legislature and California Supreme Court precedent. The California high court has held repeatedly that enjoining workplace discrimination benefits the public and not specific individuals. See *Rojo v. Kliger*, 52 Cal.3d 65, 90 (1990) ("The public policy against sex discrimination and sexual harassment in employment ... is plainly one that 'inures to the benefit of the public at large rather than to a particular employer or employee.'"); *see also Stevenson v. Superior Ct.*, 16 Cal.4th 880, 895 (1997) ("there can be little doubt that the FEHA's express policy condemning employment discrimination against older workers is one that benefits the public at large.")

"The reasoning of those cases is fully applicable to discrimination on the basis of race." *Vaughn v. Tesla, Inc.*, 87 Cal.App.5th 208, 230 (2023), *reh'g denied* (Jan. 20, 2023), *review denied* (Apr. 12, 2023). If eliminating discrimination in the employment context inures to the benefit of the general public, rather than individual employees, then an injunction that would eliminate discriminatory policies would also be for the public's benefit. See, *e.g., Stevenson*, 16 Cal.4th at 895 ("[T]he pernicious effects of age discrimination in employment are not confined to the employees who are its immediate targets..."). By extension, a public injunction that rids AmEx of policies that target people for reward or punishment based on skin color alone would primarily benefit society in general rather than specific individuals. See *Rojo*, 52 Cal.3d at 90 ("No extensive discussion is needed to establish the fundamental *public* interest in a workplace free from the pernicious influence of sexism. So long as it exists, we are *all* demeaned.") (emphasis in original).

### B.    Plaintiffs Seek a Public Injunction Consistent with *Hodges*

*Tesla* is the only published case of which Plaintiffs are aware that discusses how a request to stop such globally discriminatory policies constitutes public injunctive relief. Instead of engaging with the Court of Appeal's reasoning, AmEx cherry-picks isolated sections out of context to argue that the case goes against Ninth Circuit precedent. Although *Tesla* noted that it was not bound by *Hodges v. Comcast*

*Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021), AmEx disregards the *Tesla* court's explanation of why the injunctive relief sought in *Hodges* is distinguishable. *Tesla* emphasized that illegal discrimination, even in an individual workplace, harms the general public and that an injunction that stops a company from engaging in such conduct constitutes public injunctive relief. *Tesla,* 87 Cal.App.5th at 230-231.

This puts *Tesla* on all fours with the facts here. It also completely distinguishes it from the relief sought in *Mejia v. DACM Inc.*, 54 Cal.App.5th 691 (2020) and *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal.App.5th 710 (2021). Neither those two cases, nor *Hodges*, dealt with an injunction that the California Legislature and Supreme Court stated would benefit the general public rather than specific individuals. *Tesla,* 87 Cal.App.5th at 231, n. 16.

According to *Hodges*, "public injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Id.* at 542. This is the relief Plaintiffs are seeking here.

First, as the California Supreme Court noted, workplace discrimination affects and demeans the public as a whole, not just a particular class of persons. See *Rojo*, 52 Cal.3d at 90. AmEx's attempt to distinguish the public policy of eliminating

9

workplace discrimination from the way to effectuate this policy through public injunctions is just splitting hairs. One cannot enact public policy in a vacuum. Without specific actions, such as public injunctions that help carry out its purpose, a policy only exists in the abstract as a principle rather than a tangible goal that can be achieved.

Second, in addition to eliminating policies that discriminate against employees on the basis of race, Plaintiffs are seeking to enjoin AmEx's unlawful discrimination against existing and potential customers. See, *e.g.,* ER 183. This is consistent with the public injunctive relief this Court approved in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), which "sought to stop Rent-A-Center from using an unlawful pricing structure… thereby enjoining 'future violations' of California law in a manner that diffusely benefitted the general public as a whole." *Hodges*, 21 F.4th at 544.

### C. Enjoining Business Establishments from Engaging in Race Discrimination Benefits the General Public

If eliminating companies from charging unlawful prices benefits the public then stopping them from racially discriminating must have the same, or even more, diffuse social benefit. For instance, California's public accommodation laws were "enacted to prohibit discriminatory conduct by individual proprietors and private entities offering goods and services to the general public." *Brennon B. v. Superior Court*, 57 Cal.App.5th 367, 378 (2020); *see also Angelucci v. Century Supper Club*,

41 Cal.4th 160, 167 (2007). The federal civil rights laws serve a similar purpose on the national level. See *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 245 (1964). There can be no question that eliminating business practices that perpetuate invidious discrimination has at least the same type of social benefit as barring a business from falsely advertising.

Plaintiffs are seeking injunctive relief that would stop AmEx from using business policies that favor employees as well as existing and potential customers based on race. Like *Blair*'s unlawful pricing structure, AmEx has explicit policies that favor specific racial groups. ER 70-71, 78, 183, 187, 190-193. Eliminating this overt racial favoritism does not require considering *any* individual claims. It simply requires AmEx to eliminate the unlawful use of race in its existing policies. This would enjoin future violations of law that would benefit the general public.

## III. THE AGREEMENT PROHIBITS PUBLIC INJUNCTIVE RELIEF

AmEx claims that Plaintiffs are not prohibited from seeking public injunctive relief because of the Agreement's "all remedies" clause. But this relies on a skewed, piecemeal reading of the Agreement that ignores the intent of the language specifically crafted by AmEx. Read as a whole, the "Individual Claims Only" clause severely limits who can benefit from the arbitrator's award and eviscerates the purpose behind public injunctions.

AmEx's reliance on *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir.

2021), ignores that the relevant clause in the *DiCarlo* agreement materially differs from the one here in several respects. First, the agreement in *DiCarlo* explicitly stated that plaintiffs had the right to seek injunctive relief. See *id.* at 1157. The Agreement here has no such language.

Second, the only real dispute in *DiCarlo* was about the meaning of "individual lawsuit" and whether such a lawsuit permits public injunctive relief. The case's holding stands for the unremarkable idea that an individual lawsuit can seek public injunctive relief without the plaintiffs acting as a "private attorneys general." *Id.* at 1158. That is not in dispute here.

Third, and most importantly, the clause at issue in *DiCarlo* was broad in scope and expansive in the relief it permitted. Here, conversely, the "all remedies" clause is specifically circumscribed by another provision—the "Individual Claims Only" clause—which sets limits on who can benefit from an arbitrator's injunction. Unlike *DiCarlo*, which only dealt with the meaning of an individual *lawsuit*, the Agreement here—when read as a whole—limits Plaintiffs to individual *relief*, which is what the *McGill* rule is meant to address. *DiCarlo*, therefore, makes for a poor comparison when deciding whether public injunctive relief is available here.

///

///

12

## A. The Agreement Restricts Plaintiffs to Individual Relief Only

The Agreement's "Individual Claims Only" clause states that the "arbitrator's authority to resolve disputes is limited to disputes between…an individual and American Express…alone." ER 126. This is essentially the meaning of an "individual lawsuit" as discussed in *DiCarlo*. 988 F.3d at 1153 ("no class actions, no mass actions, no derivative actions, etc."). Had the Agreement stopped there then AmEx could credibly claim that, under *DiCarlo*, the "all remedies" clause permits public injunctive relief.

But the next sentence of the Agreement specifies that "the arbitrator's authority to make awards is limited to awards to those parties *alone*." ER 126 (emphasis added). In this way, the Agreement goes further than *DiCarlo*'s to limit arbitrations not just to individual claims but to individual remedies. The addition of the extra word "alone" also makes the Agreement more comparable to those where the limiting language permits awards "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." See *Jack v. Ring LLC*, 91 Cal.App.5th 1186, 1206 (2023), *review denied* (Sept. 13, 2023) (compiling cases). "Post-*DiCarlo*, federal district courts have construed this language to mean public injunctive relief is not available in arbitration." *Id.*

Like in these post-*DiCarlo* decisions, the extra language in the Agreement

serves as a limitation on what relief can be awarded to an individual plaintiff. The additional sentence— "the arbitrator's authority to make awards is limited to awards to those parties alone"—is unneeded to specify that only 'individual lawsuits' are permitted. ER 126. The previous sentence already makes that clear and the paragraph before it—prohibiting class and collective actions, as well as joinder and consolidation of claims—prevents the arbitrator from issuing awards to nonparties. ER 126.

This makes the extra sentence superfluous under AmEx's reading of the Agreement. Under California law, "contractual language must be construed in the context of the document as a whole and in the circumstances of the case… We 'give effect to all of a contract's terms, and ... avoid interpretations that render any portion superfluous, void or inexplicable.'" *Remedial Constr. Services, LP v. AECOM, Inc.*, 65 Cal.App.5th 658, 663 (2021). In order to give effect to the extra sentence, it must make sense considering the clause as a whole.

The import of this is that the Agreement prohibits an arbitrator from issuing an award that goes beyond benefitting the individual claimant *alone*. Thus, giving effect to the entire clause in context: An award which provides only "relief warranted by that party's individual claim," such as reinstatement to former position at AmEx, would be permissible. *Jack*, 91 Cal.App.5th at 1206. But a broader award that primarily benefits the general public, like enjoining AmEx's policies of racial

discrimination, would not. ER 126. This reconciles the first sentence, which requires individual arbitrations, with the second, which limits parties to individual *relief*. Any other reading would impermissibly "render the language of the second sentence 'nugatory, inoperative, or meaningless.'" *Headlands Reserve, LLC v. Center For Natural Lands Management*, 523 F.Supp.2d 1113, 1127 (C.D. Cal. 2007). Therefore, read as a whole, the "Individual Claims Only" clause does not allow Plaintiffs to seek public injunctive relief in arbitration.

### B. The Agreement Prohibits Public Injunctive Relief by Limiting an Injunction's Preclusive Effect

But the Agreement's restrictions on Plaintiffs' right to seek public injunctive relief do not stop there. To emphasize that any benefit of the award will be limited to just that individual party the Agreement adds that "[n]o arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration." ER 126.

The California Supreme Court has held that limiting the ability to enforce a public injunction to just an individual claimant conflicts with the intended effect of public injunctions. This was, in part, the reasoning behind the creation of the *Broughton-Cruz* rule, which prohibited claims under California's unfair business practices and false advertising laws from being arbitrated. See *Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066, 1082 (1999); *see also, Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal.4th 303, 307 (2003). The argument was that

15

since arbitration awards under California law arbitration procedures could not have nonmutual collateral estoppel effect, they would interfere with effective enforcement of public injunctions, conflicting with the policies underlying them. *Broughton*, 21 Cal.4th at 1081 ("if an arbitrator issued an injunction under the CLRA prohibiting a certain deceptive practice…only the parties to the injunction would be able to enforce it, although the injunction is public in scope.")[2]

The *Broughton-Cruz* rule was based on a previous California Supreme Court holding limiting the preclusive effect of "California law private arbitration award[s]." *Vandenberg v. Superior Court*, 21 Cal.4th 815, 825, n. 2 (1999). But the *Vandenberg* rule was explicitly limited to California law arbitrations. It did not impact the collateral estoppel effect of awards in arbitrations under the FAA. *Id.* ("No party has suggested the arbitration here at issue is governed by the [FAA] and we have no occasion to consider whether application of the FAA would alter our ruling.") The core idea though, that public injunctions need to have preclusive effect to fulfill their policy goals, remains in force.

Here, any arbitration under the Agreement would be governed by the FAA. ER 133. It would thus not be subject to the *Vandenberg* rule and, without AmEx's

---

[2] Although this Court held in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) that the FAA preempted the *Broughton-Cruz* rule, the California Supreme Court's reasoning regarding the importance of nonmutual collateral estoppel for public injunctions has been left undisturbed.

limiting clause, would have preclusive effect. See *Greenwich Ins. Co. v. Media Breakaway, LLC,* 2009 WL 2231678, at *5 (C.D. Cal. 2009), *aff'd,* 417 Fed.Appx. 642 (9th Cir. 2011) (under the FAA, "a judgment that results from court confirmation of an arbitration award has 'the same force and effect' as any other final judgment on the merits."). This Court has also held that arbitration awards can have a collateral estoppel effect on subsequent litigation. *C.D. Anderson & Co., v. Lemos,* 832 F.2d 1097, 1100 (9th Cir. 1987). This tracks the "majority of courts [that] give preclusive effect to a judicially confirmed private arbitration award that satisfies the test for collateral estoppel even in favor of non-parties to the arbitration." *In re Jauregui,* 2013 WL 1249026, at *5 (Bankr. C.D. Cal. 2013) (compiling cases).

By eliminating the preclusive effect of any arbitration award here, the Agreement eviscerates the policy behind public injunctive relief and effectively limits the relief to just the individual claimant. Read together with the individual relief language, the Agreement is like those which limit awards "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." *Jack*, 91 Cal.App.5th at 1206. It is simply another way to get to the same result—preventing relief whose primary impact would be to benefit the general public.

The Agreement's "all remedies" clause, without this limitation, would permit

a public injunction to have preclusive effect against AmEx by nonparties to this litigation. Indeed, the central organizing principle behind public injunctions is that they can be broadly enforced. See *Broughton*, 21 Cal.4th at 1081. But the "Individual Claims Only" clause prohibits an award that would have such preclusive effect.

Giving meaning to these terms together does not require the Court to create internal contradictions in the Agreement. The "Individual Claims Only" provision merely places limitations on the "all remedies" clause. "To the extent there is a contradiction, it is inherent in the arbitration provision itself." *Jack*, 91 Cal.App.5th at 1207. "Nor would [the Court] be honoring the contracting parties' expressed intent if [the Court] were to ignore the term limiting injunctive relief in arbitration." *Id.* Therefore, reading the Agreement as a whole, the only conclusion that can be drawn is that AmEx intended to prohibit public injunctive relief from being awarded in arbitration.

## IV. THE PUBLIC INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS IS NOT CONTRARY TO THE FAA

Plaintiffs' request for a public injunction is not preempted by the FAA because, as discussed above, it does not rely on an "expansion of the *McGill* rule." See *Hodges*, 21 F.4th at 547. In *Hodges* this Court emphasized that, under *McGill*, public injunctive relief does not "entail acting in a representative capacity, does not require class-action procedures, and does not primarily benefit 'specific absent parties.'" *Id.* This was why the injunctions sought under the "*Mejia-Maldonado*

18

rule" were preempted but the one in *Blair* was not.

In *Blair*, the plaintiff sought public injunctions under the Karnette Act, which "sets statutory maximums for both the 'total of payments' amount for installment payments and the 'cash price' for rent-to-own items" and prohibits "'unfair or unconscionable conduct toward consumers' who enter into rent-to-own agreements." *Blair*, 928 F.3d at 822. The requested injunctions, which did not conflict with the FAA, offered prospective relief by eliminating pricing structures that violated the Karnette Act, not retrospective relief that would benefit consumers who were already harmed by the defendant's conduct.

For an injunction to be consistent with the FAA, its implementation must eliminate the need to "require evaluation of the individual claims of numerous non-parties." *Hodges*, 21 F.4th at 547. No such evaluation would be necessary here. Like the unlawful pricing structure in *Blair*, an arbitrator here simply needs to identify the specific racially discriminatory policies at issue and issue an injunction enjoining AmEx from using them moving forward.

The Second Amended Complaint identifies AmEx policies that require relaxed financial criteria exclusively for black customers and racial quotas for personnel decisions. These policies can be enjoined without considering the claims of nonparties who allege that they were discriminated against. And an arbitrator can order this type of forward-looking relief without evaluating whether the targeted

19

policies, as applied to any individual, may have caused harm in the past. As a result, this type of injunction would prevent "'future violations' of California law in a manner that [would] diffusely benefit[] the general public as a whole" while still being consistent with the FAA. *Hodges*, 21 F.4th at 544.

AmEx's purported concern that administration of Plaintiff's requested injunction would require that its policies be reviewed in light of their "application to tens of thousands of current and prospective employees" misses the mark. Appellee Br. 32. Just like elimination of pricing structure in *Blair*, the injunction requested here merely seeks to eliminate specific policies that unlawfully use race in personnel and business decisions. Simply because "evidence of 'similar practices involving other members of the public who are not parties to the action' may be relevant to and admissible to support a public injunction claim" does not mean that such claims are not arbitrable. *Blair*, 928 F.3d at 830. It is strictly a matter of contract between the parties. *Id.* Consequently, even if the presentation of such evidence were involved here, it does not rise to the level of *procedural* complexity necessary for FAA preemption.

As this Court recognized, the possibility that arbitration of a public injunction may be more complex than arbitration of an individual action does not mandate preemption. This is because "the complexity involved in resolving a request for a public injunction 'flows from the substance of the claim itself, rather than any

procedures required to adjudicate it (as with class actions).'" *Id.* at 829. Nor does the fact that an injunction may need monitoring affect this analysis. "Ongoing injunctions sometimes need monitoring or modification. The need for monitoring and modification is inherent in all injunctive relief, public and private, and such monitoring and modification is not incompatible with informal arbitration." *Id.* Thus, the public injunctive relief Plaintiffs seek here is consistent with the FAA.

## V. THE AGREEMENT IS PROCEDURALLY UNCONSCIONABLE DUE TO UNFAIR SURPRISE

AmEx fails in its attempt to prove that the arbitration agreement is not procedurally unconscionable because it merely repeats the district court's own flawed analysis. In that analysis, the district court committed clear error by making factual findings regarding Netzel and Langkamp's onboarding with AmEx that were not in the record. *U.S. v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011) ("A finding is clearly erroneous if it is illogical, implausible, or without support in the record."). The district court did not make any factual findings with respect to Mr. Smith because it erroneously concluded that he did not raise a claim of procedural unconscionability. ER 111. His claim is thus reviewed de novo. See *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

///

///

### A. The Record Shows Netzel and Smith Did Not Know They Would Be Subject to Arbitration Before Their Employment

The uncontroverted evidence regarding Mr. Netzel is that he was not actually given the arbitration agreement until he arrived for his first day of work. ER 69-70. The district court, however, erroneously concluded that Mr. Netzel had prior notice of the arbitration agreement. This was based on an unaddressed letter with a pre-printed date. But the *only* evidence regarding this letter is Mr. Netzel's affirmative statement that he had never seen it before his first day of work, May 3, 2010, which is the day this letter was signed and dated by him. ER 69-70.

AmEx's protestations to the contrary have no evidentiary support. AmEx failed to produce a single piece of evidence claiming that it ever provided the letter to Mr. Netzel at any time before May 3rd. But AmEx speculates that Mr. Netzel must have received it earlier based on nothing except that he knew where to go on his first day of work—despite the myriad of other explanations that do not require creating nonexistent facts. Although this Court is required to uphold the district court's adequately supported factual findings, a court cannot simply invent facts that are not before it. *Richey*, 632 F.3d at 563. And the only facts here are Mr. Netzel's sworn statement that he could only have received the letter on his first day while being rushed through signing paperwork. ER 70.

Similarly, Mr. Smith alleges that he "relocated from Chicago to Phoenix, based on AmEx's representations regarding an offer of employment, without ever

being informed by the individuals who hired [him] of anything related to forced arbitration." ER 77. AmEx offers no evidence to refute this statement. Nor does it make any substantive argument that the Agreement is not procedurally unconscionable as to Mr. Smith, other than a passing footnote. Appellee Br. 33, n. 9. As such, the argument with respect to Mr. Smith is waived. See *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (contentions raised in a footnote without supporting argument are deemed abandoned).

California law applies to the unconscionability analysis with respect to Plaintiffs Netzel and Smith because New York law conflicts with California's fundamental policies. Under California law, the tactics AmEx used to present its arbitration agreement to plaintiffs demonstrates a lack of true consent. *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 125 (2019) ("an inference of voluntary assent can be indulged only so far and must yield in the face of undisputed facts that undermine it."). Thus, only crediting the facts that exist in the record, AmEx's presentation of the arbitration policy was procedurally unconscionable under both California and New York law. See *id.*; *see also, Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

///

///

**B.     AmEx Presented No Evidence That It Notified Langkamp About Arbitration**

The same is true of Mr. Langkamp who affirmatively denies being aware of any requirement regarding arbitration before starting his role. In the lower court, AmEx presented a screenshot from its employment application management system with multiple paragraphs of fine print that purported to show Mr. Langkamp was given notice of the arbitration policy. But AmEx failed to introduce any evidence that it provided this information to him.

AmEx's declaration fails to assert how this notice was provided to Mr. Langkamp, when it was provided to him, or any indication that he saw it. ER 30. It is devoid of any facts other than reciting in conclusory fashion that it is Mr. Langkamp's employment application. Even under the most liberal interpretation of notice under New York law, AmEx's declaration is fatally deficient. See *Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F.Supp.2d 256, 258 (E.D.N.Y. 2012) (proof of notice requires, at minimum, a declaration stating that documents at issue were mailed or an explanation of regular office procedures for providing such notice). Given that the record does not contain any facts showing that Mr. Langkamp had pre-employment knowledge he would be subject to arbitration, the district court's finding of notice was clear error.

Even if AmEx's deficient declaration is credited, the 'notice' provided to Mr. Langkamp was buried in a sea of fine print. AmEx attempts to discredit its own

application document by claiming the fine print is only in its exhibit. But AmEx cannot have it both ways and must abide by its own evidence which shows an attempt to conceal information, a sign of procedural unconscionability. See *Brennan*, 198 F.Supp.2d at 382.

Finally, AmEx claims that Plaintiffs "misrepresent the record" regarding the fact that Mr. Langkamp was given just minutes to review and sign dozens of pages of onboarding paperwork. Appellee Br. 38. It claims the record shows Mr. Langkamp "signed his onboarding documents seven minutes after opening them – not that his time to do so was limited in any way." *Id.* Mr. Langkamp's declaration, however, proves this statement to be false. ER 81, ¶ 5. The only evidence in the record shows that Mr. Langkamp was pressured to sign quickly, and AmEx intentionally omits this information in its brief. AmEx's concealment and pressure tactics constitute procedural unconscionability. See *Brennan*, 198 F.Supp.2d at 382.

## VI. THE AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE BECAUSE IT IS ONE-SIDED

### A. The Unambiguous Language of the Agreement Allows AmEx to Reject Valid Claims

Although AmEx strenuously argues that the Agreement does not give it discretion to turn away claims, the document's language contradicts this assertion. The Agreement tells employees their claims "will not be accepted and will be returned to you" under conditions subjectively determined by AmEx and pursuant to its interpretation of accrual of claims. See ER 127-128. AmEx makes no effort to

grapple with the actual words on the page and instead engages in a lengthy, irrelevant aside about all the alleged benefits employees receive by being forced into a secretive, objectively inferior forum with a proven track record of substantially suppressing awards plaintiffs receive as compared to cases litigated in court.[3] AmEx also declares, with no supporting evidence, that it has never exercised its discretion in turning down these claims. The Court should not credit such unverified, self-serving arguments, especially when they are contradicted by the clear language of the Agreement.

AmEx's gatekeeping provisions serve to mislead employees about their legal requirements and potentially set employees out on an unnecessary exhaustion process and may cause them to miss the limitations period for filing a claim. They may also deter employees from filing an arbitration demand because they believe they are subject to an exhaustion process when they are not. Requiring employees to perform unnecessary actions, which may result in the inability to bring a claim, deprives them of substantive rights. And when those same employees have no opportunity to consult an attorney before signing the Agreement, the results are particularly harmful.

---

[3] The claim that AmEx created and now enforces this program in draconian fashion out of some sense of corporate benevolence for its employees rather than its own financial and reputational gain pushes the outermost limits of credulity.

**B.** **The Covenant of Good Faith and Fair Dealing Cannot Save the Unilateral Modification Provision**

AmEx claims that the duty of good faith and fair dealing saves the arbitration policy from being substantively unconscionable, even though AmEx is allowed to modify the agreement at will when an employee's claim has already accrued. It relies on *Sanfilippo v. Match Group LLC*, 2021 WL 4440337 (9th Cir. 2021) which held that such an unconscionable provision does not *by itself* render the agreement unenforceable. But this is misleading because enforceability and unconscionability are two different things. What AmEx's out-of-context use of *Sanfilippo* leaves out is that the case made no change to the standard under which unconscionability itself is evaluated. For instance, multiple substantively unconscionable terms combined with procedural unconscionability still render a contract unenforceable because it shows systematic illegality. See *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000).

In fact, *Sanfilippo* and at least one Ninth Circuit case it relies on have held that unilateral modification provisions like the one here may render an arbitration provision substantively unconscionable. *Sanfilippo*, 2021 WL 4440337, at *2; *see also, Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003). Other courts applying California law have held that the implied covenant of good faith and fair dealing does not save a unilateral modification provision from being unconscionable when it applies to accrued claims, as it does here. See *Ingalls v.*

27

*Spotify USA, Inc.*, 2016 WL 6679561, at *6 (N.D. Cal. 2016); *see also, LaChapelle v. Omni Hotels Management Corporation*, 2021 WL 3373337, at *4 (N.D. Cal. 2021) ("[h]ere, the unilateral right to modify or revoke is not limited to future claims.").

AmEx also misrepresents the fact that the unilateral modification provision is "silent as to claims that have accrued." Appellee Br. 50. But the Agreement states that AmEx can modify its policy with one express exception: Demands that have already been filed. ER 134-135. This is nearly identical to clause held unconscionable in *LaChapelle*. 2021 WL 3373337, at *4 ("any modification or revocation will not apply to any claim that has already been filed under this Program…"). Because the arbitration agreement stated that defendant's right to make unilateral changes was inapplicable to only *specified* accrued claims, the court found that the "covenant of good faith and fair dealing cannot be used to 'create implied terms that contradict [such] express language.'" *Id.* Thus, the covenant cannot be used to change the express, unconscionable terms in AmEx's Agreement.

Finally, AmEx claims that Plaintiffs do not cite to any New York authority to suggest this clause is invalid. This is false. Plaintiff's Opening Brief specifically argues that such modification provisions are unconscionable under New York law because they unreasonably favor employers. Appellant Br. 40; *see also, Brennan*, 198 F.Supp.2d at 384.

### C. The Confidentiality Provision Gives AmEx an Unfair Advantage

The confidentiality clause in the Agreement extends far beyond the arbitration hearing to every action an employee may take leading up to filing an arbitration demand. AmEx's argument that it is limited only to the arbitration "proceedings" is misleading. The provision states: "All proceedings under this Policy are private and confidential." ER 129. The breadth of the confidentiality language is clear from the second sentence, which states that "[a]ll parties shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary." *Id.* The separate mention of the arbitration *hearing* in the second sentence demonstrates that the first sentence applies overly broad confidentiality requirements to the Policy as a whole. As such, the provision here is substantially more similar to the ones in *Ramos v. Superior Court*, 28 Cal.App.5th 1042 (2018) and *Storms v. Paychex, Inc.*, 2022 WL 2160414 (C.D. Cal. 2022) than the much narrower confidentiality clauses in the cases cited by AmEx.

In fact, as AmEx knows, this *exact* confidentiality language was held substantively unconscionable in a previous case in which the court explained that "the confidentiality provision requires that anything and everything pertaining to the arbitration remain confidential and it is unfairly one-sided." *Longnecker v. Am.*

*Express Co.*, 23 F.Supp.3d 1099, 1110 (D. Ariz. 2014).[4] According to *Longnecker*, "the confidentiality provision in the arbitration agreements keep only plaintiffs in the dark regarding prior arbitration decisions and only defendants would benefit from this provision." *Id.* This repeat-player effect gives AmEx, which has "institutional knowledge of prior arbitrations," a substantial advantage over its employees as a direct result of this restrictive confidentiality provision. *DeGraff v. Perkins Coie LLP*, 2012 WL 3074982, at *4 (N.D. Cal. 2012). Because the only purpose of this clause is to give AmEx an unfair advantage in arbitration, it is substantively unconscionable.

The Agreement contains at least four substantively unconscionable provisions and is thus unreasonably favorable to AmEx. It shows a systematic effort to use arbitration "not simply as an alternative to litigation, but as an inferior forum that works to [the company's] advantage." *Armendariz,* 24 Cal.4th at 124. Since the whole contract is tainted with illegality, the offending provisions cannot be severed or rewritten and the Agreement must be declared unenforceable. *Id.* Due to the multiple offending provisions, the result is the same even under New York law. See *Brennan*, 198 F.Supp.2d at 384.

---

[4] Although *Longnecker* was an Arizona case the court analyzed the confidentiality clause under California law.

## VII.  CONCLUSION

Plaintiffs request that district court's ruling ordering Plaintiffs' claims to arbitration be reversed with directions that this case proceed in the district court on all claims pled in the SAC.


Dated:  March 1, 2024                THE PIVTORAK LAW FIRM
                                     DAVID PIVTORAK (CSB 255943)


                                     By:        /s/  David Pivtorak
                                     _____
                                              DAVID PIVTORAK

                                     611 Wilshire Boulevard, Suite 911
                                     Los Angeles, CA 90017
                                     Telephone: (213) 291-9130
                                     Facsimile:  (877) 748-4529
                                     david@piv4law.com

                                     Aaron T. Martin (AZ Bar No. 028358)
                                     MARTIN LAW & MEDIATION PLLC
                                     2415 East Camelback, Suite 700
                                     Phoenix, AZ 85016
                                     Telephone: (602) 812-2680
                                     Facsimile: (602) 508-6099
                                     aaron@martinlawandmediation.com

**CERTIFICATE OF COMPLIANCE**
**FED. R. APP. 32(a) AND CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. P. 32(a) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points, and contains 6,961 words according to the Microsoft Word counting function, exclusive of the matters that may be omitted under Rule 32(f).

Dated: March 1, 2024                    By:          /s/ David Pivtorak
                                                          DAVID PIVTORAK